ROGER L. WESTERBERG, BY ARNOLD WESTERBERG,
HIS GUARDIAN AD LITEM, AND ANOTHER v.
SCHOOL DISTRICT NO. 792 OF TODD COUNTY AND
OTHERS.
BOCK LAUNDRY MACHINE COMPANY, APPELLANT.

148 N. W. (2d) 312.

February 3, 1967—No. 39,772.

2

*Quinlivan, Quinlivan & Williams,* for appellant.

*King & Flora,* for respondent plaintiffs.

*Rufer, Blatti, Hefte & Pemberton* and *Richard L. Pemberton,* for respondent school district.

KNUTSON, CHIEF JUSTICE.

This is an appeal from an order denying defendant Bock Laundry Machine Company's motion for judgment notwithstanding the verdict or for a new trial.

In the summer of 1958 the defendant school district built an addition

to a high school building and as part of the equipment purchased from Lux Hardware and Implement Company, Inc., a local dealer, laundry equipment consisting of three separate units: A washer, an extractor, and a commercial drier. The equipment was installed in the laundry room of the school, located on the ground floor beneath the gymnasium. The extractor was manufactured by defendant Bock Laundry Machine Company of Toledo, Ohio. It came to the school crated with instructions for installation and operation. After installation of the machine by Lux, the instructions were placed in the school custodian's room. Apparently no one else involved in this litigation had access to the instructions for installation and operation.

The Bock extractor consists of a basket balanced on a weighted bottom and extracts water from clothes placed in it by centrifugal force, spinning at the rate of 1,725 revolutions per minute when it reaches its top speed. The extractor is so designed as to be mounted on the floor by bolts, but in this case no bolts were ever used. It is somewhat difficult to describe the operation of the extractor and its safety devices, but the following may suffice to explain that as sold and delivered it was not possible to open the top of the machine while danger existed. It has two separate safety features, one electrical and the other mechanical. In order to start the extractor it is necessary to set a timer for the length of operation and then to move a starting lever from right to left on the machine, over the top. When the starting lever is so moved, an electrical connection is completed and the basket starts to spin if the timer knob has been turned on. This electrical connection cannot be completed unless the cover of the machine is closed, or down, due to the fact that the cover, when in a raised position, presents an obstruction to the movement of the starting handle from right to left.

After the basket starts spinning it takes about 25 seconds for it to reach its maximum speed due to the weight on the bottom of the basket, which adds to the momentum of the basket once it does reach its maximum speed. When the basket is spinning it is impossible to raise the cover of the extractor if it is operating properly. A mechanical safety device is provided, which consists of a cable that is attached on the top end to a ball joint on the hinge of the cover, and, on the bottom or inside

of the machine, to a safety lever. When the cover is raised, that safety lever just clears the top of a large drum located around the spindle which turns the basket. The drum has two steel balls on tracks which force the drum upward on the spindle when the basket is spinning due to centrifugal force. When the drum is in such an upward position the safety lever hits it and the cover cannot be raised until the drum drops down. Thus, the cover cannot be raised even with the power cut off until the basket almost stops spinning. When the speed is reduced sufficiently the metal balls drop downward in the tracks and there is an audible click. In the operational instructions, we find the following:

"* * * Caution—when stopping move lever to right and wait until you hear a click [8-10 seconds] before opening the cover."

This mechanical safety device is adjustable and must be set so that the cover can be opened from three-fourths of an inch to an inch while the basket is spinning; otherwise the safety lever would constantly grind on the drum.

Sometime in 1959 or 1960 the custodian of the school discovered that the ball joint connecting the safety lever cable to the cover had been broken, permitting the cover to be opened while the machine was running. He welded the ball joint first and later installed a new one. The custodian was thus familiar with the fact that if the ball joint was broken the cover could be opened even though the basket was spinning. He continued to check this ball joint about every 2 weeks, and had checked it within 2 weeks before the occurrences that led to this litigation.

On occasions the physical education teacher at the school would excuse students from athletic exercises for various reasons. On January 27, 1964, he excused plaintiff Roger L. Westerberg, who was then 14 years of age and a freshman in high school, because he was recovering from influenza. Two other boys, Don Wettstein and John Schultz, had also been excused from physical education. Mr. Richard Sommers, the instructor, asked Westerberg and Wettstein to repair a basketball during the hour, and John Schultz was directed to go to the laundry room and take towels from the washer there and place them in the extractor and then in the drier. John had done this before and was familiar with the

operation of the extractor. It appears that all three boys went to the laundry room and removed some towels from the washer, placed them in the extractor, ran them through the cycle required to extract the water therein, and then placed them in the drier. When they removed the towels from the extractor it had come to a complete stop. The other two boys did not pay too much attention to plaintiff. The first thing they knew was that John heard plaintiff scream and saw that he was being jerked about by the extractor; John gripped him about the waist and pulled him from the machine, but Roger's arm had been severed below the elbow. Both Schultz and Wettstein claimed they had not gone near the extractor after they had emptied it. Plaintiff claims he does not recall what happened, but it is obvious that someone, after the extractor was emptied, turned it on again before plaintiff put his arm into it. After the accident the custodian found that the ball joint had been broken and he inserted an ordinary carriage bolt in place of it, which was there several months later.

The extractor had been used for almost 6 years at the time of the accident without mishap. It was used considerably, sometimes as often as 40 times in a week.

This action was brought against the school, the manufacturer of the extractor, and the physical education instructor. The case was submitted to the jury on 18 special interrogatories. The jury found that the school was negligent in the maintenance of the extractor, in failure to provide warnings or instructions in its use, and in permitting plaintiff to use the extractor, and that all of these acts of negligence constituted proximate causes of the injury. It found Sommers, the instructor, not guilty of negligence. It found Bock was not negligent in the design of the safety mechanism of the extractor but was negligent in its instructions as to the maintenance and use of the extractor and in failing to have a warning on the extractor, both of which were proximate causes of the accident. It also found that plaintiff was not guilty of contributory negligence or assumption of risk.

This appeal is taken by Bock alone. The school district is apparently content to let the verdict stand against it and joins plaintiffs in seeking

to uphold the verdict against Bock in order that it may recover contribution.

As might be expected, the case involves liability for the manufacture and sale of a chattel. There is probably no field of tort liability that has expanded so rapidly or on which so much has been written in recent years as that of products liability. There are virtually thousands of cases dealing with various aspects of the subject. As far as this case is concerned, it is important that we bear in mind the distinction between liability for negligence in design or manufacture of a chattel and liability for failure to give adequate instructions for its use or warnings of danger inherent in its use. As to the first, there is no difficulty here because the jury has found that there was no negligence in the design of the safety features of the chattel. So we start with the premise that the machine as designed, constructed, and delivered was not a dangerous instrumentality and that the safety apparatus would eliminate any danger in use of the machine so long as the safety devices were functioning properly and maintained as they were designed. The question then becomes whether the manufacturer of a chattel free from danger if maintained in the condition in which it is sold must warn against a danger that may exist if the safety features provided are broken or not maintained by the user. While the testimony of plaintiffs' expert, Adolph Lee, was directed mainly toward proof of a defect in design, the jury declined to believe him on this phase of the case. He was permitted to state as additional opinion that there ought to have been more adequate instruction on maintenance of the machine and there should have been a warning on the machine as to the danger that might exist if the instructions were not followed. While we seriously doubt that this was a matter for expert opinion, even if it was, we think it goes too far.

There is a distinction between operational instructions and a warning of inherent danger in the use of a chattel. The manufacturer of a chattel can hardly be expected to warn of every conceivable danger that might arise from misuse of the chattel or failure to maintain it after it breaks down. Here the machine as delivered was safe if used properly. It was used without mishap for a period of 6 years. It became dangerous either because the school district failed to discover it was broken or because

the cover was forced open by plaintiff after it had come to a full stop and he had turned it on again. After a superficial examination of the ball joint and without actually testing its strength, the expert, Lee, was permitted to state that in his opinion it would take a 20-pound lift on the front of the cover to break the ball joint. There is other testimony that it would take 46 pounds of pressure on the front of the cover to break the ball joint. In any event, clearly, it was either broken before the boys started to use the extractor or was broken by plaintiff, which created a possibility of injury to him when he inserted his arm in the extractor while it was still spinning. It would be carrying the duty of a manufacturer too far to require it to anticipate every injury that may occur when the machine is improperly used. It is possible that someone might tip the machine over and injure himself by so doing. Must there be a warning not to do so? Or will the manufacturer be liable if injury results? Nearly any machine or tool that has any moving parts can be made dangerous if it is improperly used.

With respect to the duty to warn, certain principles may be adduced from the cases.

■ Inasmuch as liability rests on negligence there must exist a duty to warn of a danger inherent in the use of the chattel, whatever it may be, before there will be liability.[1]

Under our decisions, the case of Lovejoy v. Minneapolis-Moline Power Imp. Co. 248 Minn. 319, 79 N. W. (2d) 688, probably goes as far as any in holding a manufacturer liable for a defect in design, where an injury resulted from a use we held might have been foreseen. However, even in that case we said (248 Minn. 326, 79 N. W. [2d] 693):

"It is * * * the law that, if no risk could reasonably be anticipated as a result of the use of the chattel, no negligence can be predicated upon such use. To establish negligence, there must be a risk reasonably foreseeable. If the chattel is used for some purpose or in some manner which could not reasonably have been foreseen or anticipated by the manufacturer, he cannot be held liable for injuries resulting from such use."

---

[1] See, Annotation, 76 A. L. R. (2d) 9, 16.

■ Where a chattel is safe for the use for which it is intended, ordinary care does not require the manufacturer to anticipate its improper use. Despatch Oven Co. v. Rauenhorst, 229 Minn. 436, 40 N. W. (2d) 73; Greenwald v. Northern States Power Co. 226 Minn. 216, 32 N. W. (2d) 320; Hartmon v. National Heater Co. 240 Minn. 264, 60 N. W. (2d) 804.

■ A manufacturer who has actual or constructive knowledge of dangers to users of his product has the duty to give warning of such dangers.[2]

Conversely, there is no duty to warn with respect to a product that is not in fact dangerous.[3]

In Annotation, 76 A. L. R. (2d) 9, 28, we find the author stating the rule to be as follows:

"It is * * * clear that there is no duty resting upon a manufacturer or seller to warn of a product-connected danger which is obvious, or of which the person who claims to be entitled to warning knows, should know, or should, in using the product, discover.

"It has been said that it would be totally unreasonable to require that a manufacturer warn against every injury which may ensue from mishap in the use of its product. A manufacturer is not negligent if he fails to utter a warning against a general possibility of danger."

■ While it may be useless even to try to review the great mass of case law on this subject, reference to a few cases frequently cited for illustrative purposes may be of help.

Jamison v. Reda Pump Co. 190 Okla. 593, 126 P. (2d) 71, involved an attempt to recover for injuries sustained when plaintiff was electrocuted in connecting up a pump. In denying recovery, the court said (190 Okla. 595, 126 P. [2d] 72):

"* * * If in the design and fabrication of devices the manufacturer is obliged to foresee every kind of an incident that possibly could arise, not alone those that arise from the inherent qualities of the device itself but also those that arise from accident or breakage, the burden would be intolerable.

---

[2] Annotation, 76 A. L. R. (2d) 9, 16.

[3] Annotation, 76 A. L. R. (2d) 21.

"We are of the opinion that if a device is suitable and safe for the purpose for which it is to be used when it is sold by the manufacturer, the manufacturer has discharged its duty; and the fact that the device becomes dangerous by breakage or depreciation while in use does not constitute an act of negligence on the part of the maker."

Hentschel v. Baby Bathinette Corp. (2 Cir.) 215 F. (2d) 102, involved an action for damages when a bathinette caught fire. The legs were made of magnesium, which ignites when exposed to a high degree of heat. In denying recovery, the court said (215 F. [2d] 105):

"* * * [W]here an article is not inherently dangerous in its normal or intended use neither its manufacturer nor vendor is liable for a result which is brought about by its subjection to unusual and extraordinary conditions."

In Tuttle v. United States Slicing Machine Co. (4 Cir.) 335 F. (2d) 63, plaintiff sued to recover for loss of his forearm when he was using a meat grinder. The meat grinder was fitted with a protective grill by the manufacturer, which grill was removed by the user so as to permit his hand to go into the meat grinder. The court denied recovery, holding that no warning of danger was necessary as the machine as sold was not dangerous.

See, also, Pontifex v. Sears, Roebuck & Co. (4 Cir.) 226 F. (2d) 909, holding there was no liability in the sale of an old model lawn mower started by the pull of a rope, which injured plaintiff when she was struck in the eye by the end of the rope; Jamieson v. Woodward & Lothrop, 101 App. D. C. 32, 247 F. (2d) 23, holding that there was no liability for failure to warn of the danger in using an elastic rope as a "tummy flattener" when it slipped off the end of the user's foot and struck her in the eye; and Ein v. Goodyear Tire & Rubber Co. (N. D. Ind.) 173 F. Supp. 497, holding that there was no liability for failure to warn that a tubeless tire was more apt to blow out if bruised than a tire having a tube.

These are but a few of the cases illustrating what we believe ought to be the rule: The duty to warn rests on foreseeability.[4] If a chattel is sold

---

[4] See 1 Frumer & Friedman, Products Liability, § 8.03, where cases on this subject are exhaustively examined.

that is free from defects in manufacture and design and is not dangerous if used as intended, the manufacturer is not liable for results caused by improper use of the chattel or changes made in its construction without the manufacturer's knowledge which makes it dangerous. Nor is there any duty to warn of nonexisting dangers, or dangers that are obvious to anyone. If the chattel is safe when sold, a manufacturer is not required to anticipate or foresee that a user will alter its condition so as to make it dangerous, or that he will continue to use it after it becomes dangerous due to alteration in safety devices intended to protect the user from harm.

In Prosser, Torts (3 ed.) § 96, p. 667, we find the following:

"If the chattel is in good condition when it is sold, the seller is not responsible when it undergoes subsequent changes, or wears out. The mere lapse of time since the sale by the defendant, during which there has been continued safe use of the product, is always relevant, as indicating that the seller was not responsible for the defect. There have been occasional cases in which, upon the particular facts, it has been held to be conclusive. It is, however, quite certain that neither long continued lapse of time nor changes in ownership will be sufficient in themselves to defeat recovery when there is clear evidence of an original defect in the thing sold.

"Unless he has reason to expect otherwise, the seller is entitled to assume that the product will be put to a normal use, for the purpose for which it is intended, and in accordance with directions properly given; and he is not liable, either for negligence or for breach of warranty, when it would ordinarily be safe, but injury results because it is mishandled, or is used in some unusual and unforeseeable way, * * *."

Respondents rely on our former cases of Lovejoy[5] and Johnson,[6] but in those cases there was no alteration of the chattel by the user which made it dangerous. The danger in Lovejoy existed when the chattel was sold, and we held that it was foreseeable that a tractor might be used going downhill so that the flywheel would revolve at a rate greater than

---

[5] Lovejoy v. Minneapolis-Moline Power Imp. Co. 248 Minn. 319, 79 N. W. (2d) 688.

[6] Johnson v. West Fargo Mfg. Co. 255 Minn. 19, 95 N. W. (2d) 497.

that for which it was safely designed. In Johnson we held that the dangers existed in the apparatus when sold and that failure to warn might lead to liability on the grounds of negligence. The same is true of Hartmon.[7] There a dangerous condition was created when the user of a gas burner removed a plug which permitted a flow of gas into the gas chamber, which caused the explosion. That decision is based on foreseeability that an inexperienced operator might do exactly what he did. These cases are distinguishable from the one now before us, where a chattel contained such safety devices that no danger existed if it was maintained and used in the condition in which it was delivered, but the danger arose when it was used after it broke down and its altered condition created the danger.

It is difficult to know where to draw the line on a manufacturer's liability in the sale of products. There must be a limit to such liability somewhere. We think this case lies outside the area where liability exists. The manufacturer here has done all anyone could reasonably expect it to do in making the chattel safe for the use for which it was intended. The responsibility for maintaining it in the safe condition in which it was sold rested with the user. It was the failure of the school district to discharge that duty that made the injury possible.

While we deal here mainly with the duty of the manufacturer to warn, a distinction must be made between the duty to warn, which involves establishment of negligence, and proximate cause, which involves causal relationship between the negligence, if established, and the injury. Here we are convinced there was no duty to warn of a use that could not be foreseen by the manufacturer, which means that plaintiffs have failed to establish negligence.

Other issues are raised pertaining mainly to the right to a new trial. In view of the fact that we conclude that appellant is entitled to judgment notwithstanding the verdict of the jury, we need not discuss these alleged errors. However, we do not wish to have it understood that we condone the type of argument made by plaintiffs' counsel to the jury. In another case such argument could well lead to a new trial.

---

[7] Hartmon v. National Heater Co. 240 Minn. 264, 60 N. W. (2d) 804.

The order of the trial court is reversed with instructions to enter judgment for appellant.

MR. JUSTICE PETERSON, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.