**Dan GERMANN, Respondent,**

v.

**F.L. SMITHE MACHINE COMPANY, Defendant and Third Party Plaintiff, Petitioner, Appellant,**

**Quality Park Products, Third Party Defendant.**

No. C9–85–1442

Supreme Court of Minnesota.

Nov. 14, 1986.

Henry A. Cousineau, Jr., Bruce D. Elliot, Minneapolis, for F.L. Smithe Mach. Co.

Steven J. Kirsh, Michael S. Ryan, St. Paul, for Dan Germann.

Michael Forde, Minneapolis, for Quality Park Products.

KELLEY, Justice.

The manufacturer properly designed an industrial hydraulic press by equipping it with safety devices. Had those devices as designed been properly attached to the hydraulic press, an operator of the machine would not have sustained an injury. The question presented is whether, under existing circumstances, the manufacturer had the legal duty to warn users or operators of the machine of the dangers inherent in its operation without having the designed safety devices functionally operative. The trial court and the court of appeals [1] ruled it did have such a duty. We concur and affirm.

In 1975 appellant F.L. Smithe Machine Company (Smithe) delivered to Quality Park Products (Quality Park) a programmable hydraulic press (hereinafter referred to as PHP 33) in two separate crates. The stationary table for the machine was in one crate; the operating and moving machinery was in the other. Smithe provided manuals containing instructions for assembling and maintenance of the PHP 33. Employees of Quality Park, using those manuals, assembled the machine. As part of the assembly, a safety bar needed to be attached to the machine. When properly placed, the safety bar would prevent the operator from being injured as the result of entanglement of body members in the "pinch point" between the moving and stationary tables that were part of the press. On original assembly, by following Smithe's manual instructions and diagrams, Quality Park's employees properly attached the safety bar. Because the safety bar was located between the moving and stationary tables of the press, it had to be removed in order to permit access to the machine for maintenance and repair. From the time of the original assembly of the press by Quality Park's employees until the date of the accident, the safety bar had been removed for maintenance service on only one or two occasions. But on the day of the accident giving rise to this case, the safety bar was unattached.

More than six years after the installation and assembly of the PHP 33, respondent Germann, a Quality Park employee, sustained serious injuries to his left leg when it became caught in the press between the moving and stationary table.

At the time of the accident Quality Park had three PHP's in its plant. The two others were similar to the PHP 33 except

**1.** *Germann v. F.L. Smithe Machine Co.,* 381 N.W.2d 503 (Minn.App.1986).

the latter was equipped with additional safety devices not attached to the other two. At the time of the accident Germann was operating the PHP 33, which he had operated previously on a number of occasions. Undisputed evidence clearly establishes that the safety bar was not in place at the time of the accident, and had not been for months.[2]

Germann sought personal injury damages from appellant Smithe claiming that the PHP 33 had been defectively designed, and that Smithe had failed to adequately warn operators of dangers connected with the machine's use when functional safety equipment was not attached. Smithe impleaded Quality Park. At trial the jury found (1) that the PHP 33 was not defective because of design, but (2) that the PHP 33 was defective because Smithe failed to provide adequate warnings for the safe use of the product.[3] Following the verdict, Smithe moved for judgment notwithstanding the verdict or for a new trial. The trial court denied both motions and the court of appeals affirmed.

1. The primary issue raised in this appeal is whether Smithe had the legal duty to warn users of the dangers of using the PHP 33 when the safety bar was not properly attached. The question of whether a legal duty to warn exists is a question of law for the court—not one for jury resolution. Prosser and Keeton, *The Law of Torts* § 37, p. 236 (5th ed. 1984); Restatement (Second) of Torts § 328B (1965).

Smithe contends it had no duty to provide warnings as to the unsafe operation of a machine it manufactured (i.e. PHP 33) when it had provided a safety bar which, if properly installed and maintained, would have prevented the accident. The danger caused by the absence of the safety bar, it contends, was solely due to the neglect of Quality Park in its failure to properly maintain the safety bar in place. It relies on *Westerberg v. School District 792*, 276 Minn. 1, 148 N.W.2d 312 (1967) where we noted the duty to warn rests directly on the foreseeability of the injury. 276 Minn. at 9, 148 N.W.2d at 317. Improper use of the product, however, resulting from such things as improper maintenance need not be anticipated by the manufacturer. 276 Minn. at 7–8, 148 N.W.2d at 316. *See also Rogers v. Unimac Co.*, 115 Ariz. 304, 565 P.2d 181 (1977).

While not disagreeing that foreseeability of injury is the linchpin for determination whether a duty to warn exists, Germann responds that because Smithe designed the press with a removable safety bar, a design that, in fact, *requires* its removal for the machine's maintenance, Smithe reasonably knew or should have recognized the potentiality that the bar might not be properly replaced. Germann argues Smithe should, therefore, have warned operators, by the attachment of a warning decal or by other appropriate means, that for the safe operation of the machine, the safety bar should be properly installed and functional.

As indicated, whether there exists a duty is a legal issue for court resolution. Green, *Foreseeability in Negligence Law*, 61 Colum.L.Rev. 1401, 1408 (1961). In determining whether the duty exists, the court goes to the event causing the damage and looks back to the alleged negligent act. If the connection is too remote to impose liability as a matter of public policy, the courts then hold there is no duty, and consequently no liability. On the other hand, if the consequence is direct and is the type of occurrence that was or should have been reasonably foreseeable, the courts then hold as a matter of law a duty exists. Other issues such as adequacy of the warning, breach of duty and causation remain

---

2. The usual operator of PHP 33 stated the bar had not been attached for months prior to the accident. Germann indicated he never had seen the safety bar and only learned of its existence after the accident. Neither of the other PHP's, one of which Germann usually operated, came equipped with a safety bar.

3. Judgment was entered in favor of Germann in the amount of $100,000, one-half apportioned to Smithe and one-half to Quality Park.

for jury resolution. *Christianson v. Chicago St. P., M. & O. Ry. Co.,* 67 Minn. 94, 69 N.W. 640 (1896).

Appellant reads *Westerberg* to limit the duty issue so as to relieve the manufacturer from providing an adequate warning against misuse. Such a reading, in our view, extends *Westerberg* beyond its actual holding. In *Westerberg* the court did state "[t]he manufacturer of a chattel can hardly be expected to warn of every conceivable danger that might arise from misuse of the chattel or failure to maintain it after it breaks down." *Westerberg,* 276 Minn. at 6, 148 N.W.2d at 315. Based upon the facts in that case, the court demonstrated that it would be carrying the duty of a manufacturer ·too far to require it to anticipate every injury that might occur when the machine was so improperly used or maintained. In *Westerberg* we noted the manufacturer could not have reasonably anticipated either the action of the school's maintenance man in altering a broken safety device or the action of the students in overriding the safety lid of the laundry machine by use of some sort of pry bar. Our later cases, however, demonstrate that if a manufacturer-seller should anticipate that an unwarned operator might use the machine in a particular manner so as to increase the risk of injury and the manufacturer has no reason to believe that users will comprehend that risk, a duty to warn may exist. *See, e.g., Bilotta v. Kelley Co.,* 346 N.W.2d 616, 621 (Minn.1984); *Holm v. Sponco Mfg., Inc.,* 324 N.W.2d 207, 212 (Minn.1982); *Frey v. Montgomery Ward & Co.,* 258 N.W.2d 782, 786 (Minn.1977); *Clark v. Rental Equipment Co.,* 300 Minn. 420, 426, 220 N.W.2d 507, 511 (1974).

■ In some respects the facts in *Westerberg* are indistinguishable from those in the case at bar. Each case involves injury arising from the use of a machine approximately six years old. Each machine was heavily used. Both accidents occurred as a result of faulty maintenance by the purchaser-owner-employer which caused designed safety mechanisms in each machine

to fail. However, in our opinion, a distinguishing fact of significance exists. The safety lid device on the washer in *Westerberg* was installed by the manufacturer in such a manner it was only remotely foreseeable that the safety feature would be altered or allowed to fall into disrepair in a manner so as to increase any risk of injury to a user. *See* 276 Minn. at 3, 148 N.W.2d at 313. To the contrary, in the case at bar, the safety bar was designed to be attached by the purchaser. In addition, the safety bar was detachable as the result of the machine's design. In fact,· it had to be detached in order that the press might be serviced. Knowing that, Smithe could have reasonably foreseen that on a machine designed for extended and heavy use, it was almost inevitable that for maintenance purposes the safety bar would be removed, and that there was a risk it might not be properly reattached. If the safety bar was not properly reattached, there would be exposure to a user-operator of increased danger of injury of the type the safety bar had been designed to prevent. This misuse was foreseeable; it was not remote; and the danger of injury to a user because of the misuse was likewise foreseeable. Therefore, we hold Smithe had a legal duty to warn operators of the peril of running the press without a properly attached and operating safety bar.

■ 2. Next, appellant contends the jury's answers to special verdict interrogatories are irreconcilable. Smithe contends that inasmuch as the jury failed to find defective design of the press, nothing exists that would require a warning. Smithe contends that as a manufacturer, it only had the duty to warn of design defects. Minnesota law for many years has been to the contrary. *See, e.g., Bigham v. J.C. Penney Co.,* 268 N.W.2d 892 (Minn.1978); *Clark v. Rental Equipment Co.,* 300 Minn. 420, 220 N.W.2d 507 (1974); *McCormack v. Hankscraft Co.,* 278 Minn. 322, 154 N.W.2d 488 (1967); *Lovejoy v. Minneapolis-Moline Power Implement Co.,* 248 Minn. 319, 79

N.W.2d 688 (1956).[4] The verdict answers were not inconsistent; the jury found the machine to be properly designed but that Smithe had breached a duty to warn of its use without the designed safety features being attached and functional—two different but consistent findings.

 Smithe likewise claims no credible evidence exists to support the jury's verdict. We have carefully reviewed the evidence. After doing so, we come to the conclusion that there was more than sufficient lay and expert testimony combined with other evidence to justify the jury's verdict that Smithe breached its obligation to provide an adequate warning, and that the breach was a legal cause of Germann's injuries. Accordingly, we sustain the verdict because we find it not to be manifestly contrary to the evidence. *Sandhofer v. Abbott-Northwestern Hospital*, 283 N.W.2d 362, 368 (Minn.1979); *Lamke v. Louden*, 269 N.W.2d 53, 56 (Minn.1978).

Affirmed.

---

**4.** All of the cited cases involved negligence claims. However, this court has adopted the position that strict liability for failure to warn is based upon principles of negligence. *See, e.g.,*

---

*Hauenstein v. Loctite Corp.*, 347 N.W.2d 272 (Minn.1984); *Holm v. Sponco Mfg. Co.*, 324 N.W.2d 207, 215 (1982) (Simonett, J. dissenting).