452 N.W.2d 492 (1990)
James H. ALEVIZOS, et al., Petitioners Below,
Frank L. Ario, et al., Petitioners and Plaintiffs, Appellants,
v.
The METROPOLITAN AIRPORTS COMMISSION OF MINNEAPOLIS AND SAINT PAUL, Respondent.
No. C7-89-1206.
Court of Appeals of Minnesota.
March 13, 1990.
Review Denied May 11, 1990.
*495 Eric J. Magnuson, Rider, Bennett, Egan & Arundel, Richard J. Gunn, Bradley J. Gunn, Olson, Gunn and Seran, Ltd., Minneapolis, for appellants.
Michael Berens, Kelly & Berens, P.A., Lucinda E. Jesson, Oppenheimer, Wolff & Donnelly, Minneapolis, for respondent.
Considered and decided by NORTON, P.J., PARKER and HUSPENI, JJ.

OPINION
NORTON, Judge.
This action in mandamus for inverse condemnation was initially brought in Hennepin County District Court on July 17, 1970 as a class action against respondent Metropolitan Airports Commission (MAC) by appellants and others owning property near the Minneapolis-St. Paul International Airport (MSP). The landowners alleged that the noise created by the movement of aircraft to and from MSP was an unreasonable invasion of their property rights which constituted an unconstitutional taking of an avigational easement. The landowners, however, were denied class certification by the district court and appealed. On March 15, 1974, the Minnesota Supreme Court affirmed the trial court's denial of class certification in Alevizos v. Metropolitan Airports Commission, 298 Minn. 471, 216 N.W.2d 651 (1974) (Alevizos I). The court remanded the case for further proceedings, setting forth the elements necessary to establish MAC's liability under a theory of inverse condemnation.
The remanded action was subsequently tried as a test case concerning a single parcel of land owned by appellants Frank and Georgette Ario. Following a trial on the merits to the district court without a jury in early 1979, the landowners were denied a writ of mandamus. Subsequently, the case was once again appealed. In Alevizos v. Metropolitan Airports Commission, 317 N.W.2d 352 (Minn.1982) (Alevizos II), the supreme court determined that the landowners were entitled to a jury trial and reversed and remanded the action for trial on all issues.
In June of 1983 the landowners again sought class certification, but as to a smaller class of properties. The trial court ordered the class certified over the objections of MAC, but certified its order as important and doubtful for review. On May 17, 1985 in Ario v. Metropolitan Airports Commission, 367 N.W.2d 509 (Minn.1985), the supreme court reversed the trial court, holding that the proposed class still failed to meet the conditions established in Alevizos I for maintenance of a class action.
Once again, the case was assigned for trial. To facilitate settlements, the trial court ordered that the matter be tried initially only as to a group of three parcels, to *496 be followed by trials concerning parcels in groups of five. On January 11, 1989 this action came on for trial as to the three parcels of land owned by appellants Frank and Georgette Ario, Carl and Gloria Frost and Helen Wade.
In order to assure the orderly presentation of testimony and that appellants' parcels would be valued as of the same date, the parties agreed in pretrial proceedings that June 1, 1986 would be the valuation date of the property.
Following a trial, the jury returned a special verdict finding no direct and substantial invasion of appellants' property rights by MAC. The trial court made findings of fact and conclusions of law consistent with the jury's verdict. Appellants subsequently moved the trial court for an order granting alternatively: judgment notwithstanding the verdict; judgment notwithstanding the verdict (or amended findings of fact and conclusions of law) and a new trial on the issue of diminution and market value; and/or a new trial on all issues. The trial court denied appellants' motion for post-trial relief and entered judgment in favor of MAC.
We affirm.

FACTS
The appellants in this matter have resided in south Minneapolis near MSP for many years. Mrs. Wade built her home in 1938, the Arios purchased their home in 1962, and the Frosts moved into their home in 1967.
Appellants' neighborhood is near many schools, churches and shopping centers and has good public transportation and convenient access to freeways. The neighborhood has many mature trees and is made up of attractive, well-kept homes.
Appellants' homes are within a three block radius and each is located within two or three blocks of the northwest corner of MSP. MSP's two parallel runways, 11L-29R and 11R-29L, which run in a northwest to southeast direction in order to take advantage of predominant northwesterly winds, handle the majority of the take-offs and landings at the airport. Appellants' parcels are in such a position that many take-offs and landings at MSP require aircraft to be directed over their homes.
Prior to the late 1960s, aircraft noise affecting appellants' neighborhood wasn't a problem. After 1968 or 1969, however, the aircraft noise became more serious. During the 1970s and 1980s many factors affected the aircraft noise impacting appellants' neighborhood. The number of aircraft operations (defined as a take-off or a landing) steadily increased from 236,108 in 1972 to over 400,000 in 1986. As peak traffic hours grew, more and more operations were forced to use MSP's parallel runways and to fly over appellants' neighborhood.
The amount of noise generated by individual planes was reduced somewhat as technology improved and the commercial fleet was upgraded with modern aircraft. MAC also implemented policies designed to minimize the noise problem, such as, a "preferential runway system" to divert aircraft traffic away from South Minneapolis when traffic and weather conditions permitted. As the number of operations at MSP grew, however, the average number of hours the preferential runway system could be used daily fell from 21 in 1979 to 11 in 1986.
Because the property owners in the area perceived the aircraft noise as a serious problem, they brought this action, initially as a class action composed of approximately 27,565 businesses and residential property owners, alleging their property had been unconstitutionally taken due to the aircraft noise.
Evidence was presented at trial as to the nature of appellants' neighborhood and its amenities; the noise level in the area produced by aircraft taking off and landing at MSP; the detriment suffered by appellants due to such noise; and the compatibility of the neighborhood as a residential area given the noise produced by the aircraft. Additionally, extensive evidence was introduced as to the effect of the aircraft noise on the value of properties in the real estate market encompassing appellants' homes.
*497 Following final argument, the trial court instructed the jury as to the elements of the law constituting a taking under a theory of inverse condemnation. The jury subsequently returned a special verdict form consisting of three questions to be answered with regard to each of the appellants:
1. Was there a direct and substantial invasion of the property rights?
2. Did such invasion result in a definite and measurable diminution in market value of the petitioners' property, which the property owning public in general did not suffer?
3. State in money the diminution in market value of the petitioners' property as a direct result of the invasion of property rights and increase, if any, in noise level that occurred since they purchased the property, or since July 17, 1964, whichever was later, until June 1, 1986.
The latter two questions were to be answered only in the event the preceding question was answered in the affirmative. The jury answered the first question "no" with regard to each of the appellants. Subsequently, the trial court issued findings of fact and conclusions of law indicating that no substantial invasion of appellants' property rights occurred and entered judgment in favor of MAC.

ISSUES
1. Did the trial court properly determine the issue of "substantial invasion" of appellants' property rights by submitting the question to the jury?
2. Was the trial court's judgment in favor of MAC finding no substantial invasion supported by the evidence?
3. Did the trial court abuse its discretion in excluding evidence of the Minnesota Pollution Control Agency's noise standards?
4. Did the trial court err in failing to give appellants' requested jury instructions specifically explaining the nature of their property rights?
5. Did the trial court err in directing the verdict as to the issue of whether a "substantial invasion," if it were found to exist, was reasonably probable to continue into the future?

ANALYSIS

I. Substantial Invasion

In United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946) the Supreme Court noted that "the flight of airplanes which skim the surface but do not touch it, is as much an appropriation of the use of the land as a more conventional entry upon it." Id. at 264-65, 66 S.Ct. at 1067-68.
The Minnesota Supreme Court has considered the issue of the appropriation of such an "avigational easement" by the government noting that:
Every landowner must continue to endure that level of inconvenience, discomfort, and loss of peace and quiet which can be easily anticipated by any average member of a vibrant and progressive society. But when those interferences reach the point where they cause a measurable decrease in property market value, it is reasonable to assume that, considering the permanency of the air flights, a property right has been, if not "taken or destroyed," at the very least "damaged," for which our constitution requires that compensation be paid. * * * Property owners cannot  and we are sure they do not expect to  have the advantages created by conveniences and yet be paid for the undesirable effects created by the same conveniences unless those effects adversely affect their property so directly and so substantially that it is manifestly unfair to require them to sustain a measurable loss in market value which the property owning public in general does not suffer.
Alevizos I, 298 Minn. at 486-87, 216 N.W.2d at 662. The supreme court went on to establish the elements which would give rise to a cause of action in an adverse condemnation against an airport operator:
The test, then, that we prescribe will give relief to any property owner who can show a direct and substantial invasion of *498 his property rights of such a magnitude he is deprived of the practical enjoyment of the property and that such invasion results in a definite and measurable diminution of the market value of the property.
To justify an award of damages it must be proved that these invasions of property rights are not of an occasional nature, but are repeated and aggravated, and that there is a reasonable probability that they will be continued in the future.
Id. at 487-88, 216 N.W.2d at 662.
Appellants argue that the trial court's determination of "no substantial invasion" was neither supported by the law or the facts in this matter. They contend that the court's determination was unequivocally contrary to the overwhelming evidence at trial and to other rulings of the court.
Although appellants maintain the "substantial invasion" issue is ultimately a question of law to be decided by the trial court, the supreme court in Alevizos II commented on the standard for recovery for inverse condemnation established by its earlier decision:

Alevizos I presents a two-step test for a constitutional taking in these unique airport noise cases: namely, does the noise constitute a "substantial" invasion and does such invasion result in a "measurable" diminution of market value. While in the end these are questions of law, they are actually questions of law "mixed" with questions of fact.

Alevizos II, 317 N.W.2d at 360 (emphasis added). The Alevizos II court also stated, "where the facts are disputed the mandamus court should utilize a jury to resolve the disputes preparatory to its decision on the ultimate question of law." Id., 317 N.W.2d at 359.
We hold the trial court acted consistently with the mandate of Alevizos II by submitting to the jury questions concerning the elements constituting an inverse condemnation.
After losing a court trial concerning the Ario property in 1979, the landowners appealed on the basis that they were entitled to a jury trial. Now that they have had and lost such a trial, appellants allege the determinative issues are purely questions of law. We are not persuaded by this argument. Appellants were afforded substantial input into the structure of the trial and not only failed to object but affirmed the submission of the questions to the jury.

II. Sufficiency of Evidence

The determination of the elements constituting a direct and substantial invasion, as mixed questions of law and fact, necessarily involves factual findings. Thus, this court must first determine whether the evidence of record supports such a factual determination and then secondly, independently review the trial court's ultimate conclusions of law. Cf. Meyering v. Wessels, 383 N.W.2d 670, 672 (Minn.1986).
In this case the trial court submitted the issue of whether the aircraft noise impacting appellants' property constituted an inverse condemnation. The court instructed the jury with regard to the substantial invasion question as follows:
There are five essential elements of the complaint of direct and substantial invasion of property rights, each of which the petitioners must prove by the greater weight of the evidence in order to prevail on this issue:
1. The air flights constituted a direct and substantial invasion of property rights of such a magnitude that the owner of property is deprived of its practical enjoyment; and
2. It would be manifestly unfair to the owner to sustain thereby a loss in market value which the property owning public in general does not suffer; and
3. The loss and market value is definite and measurable; and
4. The invasions of the property rights must be repeated, aggravated, and must not be of an occasional nature; and
5. There must be a reasonable probability that the invasions will be continued into the future.
At the close of trial the jury, after receiving a printed copy of the trial court's instructions, then answered a special verdict *499 form indicating that there was not a direct and substantial invasion of the property rights of appellants.
Where a jury's verdict involves conflicts in evidence, a reviewing court is bound to consider the evidence in a light most favorable to the verdict and to sustain the verdict if it is possible to do so on any reasonable theory of evidence. A jury's verdict will not be set aside unless it is manifestly and palpably contrary to the evidence. Thus, a jury verdict will be overturned only if no reasonable mind could find as did the jury. Hauenstein v. Loctite Corp., 347 N.W.2d 272, 275 (Minn.1984).
Although appellants challenge the jury's verdict and the trial court's finding of fact as contrary to the weight of the evidence presented at trial, there clearly was conflicting evidence as to the factual issues constituting diminuation of market value, a factor which alone could defeat appellants' claim. See Alevizos II, 317 N.W.2d at 360.
A great deal of evidence was also presented at trial as to the issue of whether aircraft noise diminished the value of the real estate market of which appellants' property is a part. Mark Johnson, a real estate listing agent who has sold real estate in the area for over 17 years, testified that there was a strong and consistent demand for homes in appellants' neighborhood and that airport noise was not a major factor to most prospective purchasers in the area. He testified that in more than 250 listings in appellant's neighborhood, he never lowered a listing price because of aircraft noise, and that in his opinion the market value of the homes in appellants' neighborhood was not adversely affected by operations at MSP. Johnson's computerized records, accounting for all real estate transactions in the neighborhood since 1972, indicated that the property value in appellants' neighborhood rose evenly with, or at a more rapid rate, than property values in the surrounding MLS district and in the City of Minneapolis as a whole.
Lewis Frillman, a real estate appraiser, also testified that home prices in the MLS district in which appellants' homes were situated appreciated at an equal or faster rate than did home prices in the City of Minneapolis as a whole. Frillman additionally testified to a computer regression analysis that was conducted with regard to homes typical of appellants' neighborhood and similar homes elsewhere. Frillman testified that if a comparable home in a comparable neighborhood with less noise were moved into appellants' neighborhood, the home would increase in value. Frillman indicated the computer study established that virtually identical homes located elsewhere would be worth more if they were in appellants' neighborhood.
Frillman also used a "matched pairs" examination which, under traditional appraisal analysis, indicated that the value of appellants' homes would almost always decrease when moved to comparable neighborhoods with less aircraft noise.
It thus cannot be said that the jury's verdict was "perverse or palpably contrary to the evidence" or that there was "no room for differences of opinion among reasonable persons." See Germann v. F.L. Smithe Machine Co., 381 N.W.2d 503, 507 (Minn.Ct.App.1986), aff'd, 395 N.W.2d 922 (Minn.1986).
Furthermore, the trial court properly applied the law to the jury's factual determination. Given the factual finding of no substantial invasion, the trial court properly concluded that appellants failed to establish that their property had been appropriated by MAC.
In its order and memorandum denying appellants' claim for post-trial relief, the trial court acknowledged the problems confronting appellants stating:
There must be much sympathetic recognition of the problem facing these conscientious property owners and their neighbors. Their conversations, sleep, television, solitude, socialization, and other activities were substantially interfered with according to abundant evidence.
Notwithstanding the trial court's "sympathetic recognition," its conclusions of law are consistent with the law as established in Alevizos II: "[d]iminution in one's enjoyment *500 and use of property is not the same as a diminution of market value." Id., 317 N.W.2d at 359.

III. MPCA Noise Standards

Pursuant to statutory authority, the Minnesota Pollution Control Agency (MPCA) has promulgated standards describing the maximum levels of noise consistent with various activities. See Minn. Stat. § 116.07 (1988).
MAC brought a pre-trial motion to exclude the MPCA noise standards from evidence, arguing that airport noise regulation by states is preempted by federal law and is unenforceable against MAC. The trial court ruled that the MPCA standards were inadmissible absent an independent showing by appellants of relevance and non-preemption.
Appellants urge that such noise standards are admissible, relevant, and material to their inverse condemnation action. Appellants contend that the exclusion of the standards was erroneous because they sought to introduce the evidence, not to enforce the MPCA standards against MCA, but rather to establish a governmentally approved maximum noise level for the use and enjoyment of residential property.
Absent a clear abuse of discretion, evidentiary rulings of a trial court will not be disturbed. Jenson v. Touche Ross & Co., 335 N.W.2d 720, 725 (Minn.1983); Molkenbur v. Hart, 411 N.W.2d 249, 253 (Minn.Ct.App.1987), pet. for rev. denied (Minn. Oct. 30, 1987). Before an error in the exclusion of evidence may be grounds for a new trial, it must appear that such evidence might reasonably have changed the result of the trial if it had been admitted. Poppenhagen v. Sornsin Construction Co., 300 Minn. 73, 79-80, 220 N.W.2d 281, 285 (1974).
While it is true that agency rules, regulations or codes may be admissible in tort actions to determine negligence, MAC's failure to satisfy a duty of care is not at issue. See Alevizos I, 298 Minn. at 479, 216 N.W.2d at 658-59.
The United States Supreme Court has examined the authority given the federal government over aviation, concluding the Federal Aviation Administration, in conjunction with the Environmental Protection Agency, has full control over aircraft noise, preempting state and local control. City of Burbank v. Lockheed Air Terminal, Inc., 411 U.S. 624, 633, 93 S.Ct. 1854, 1859, 36 L.Ed.2d 547 (1973); see also Pirolo v. City of Clearwater, 711 F.2d 1006, 1010 (11th Cir.1983); San Diego Unified Port District v. Gianturco, 651 F.2d 1306, 1316 (9th Cir.1981), cert. denied, 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982).
Here, appellants urge that they were prohibited from introducing evidence showing the levels of noise generated near MSP were inconsistent with their use of their neighborhood as a residential neighborhood. To the contrary, the trial court merely excluded evidence of the standards themselves stating:
Experts testifying as to whether or not the actions of MAC are reasonable may wish to take PCA standards into account, but the standards in and of themselves are not admissible in evidence in the absence of an independent showing of both relevance and non-preemption.

(Emphasis in original).
Appellants presented testimony indicating the location of appellants' property in relation to MSP was incompatible with their use of the property as a residential neighborhood. To allow appellants to introduce evidence of MAC's non-compliance with the MPCA standards could have created an inference that MAC's operation of MSP is in violation of state law. Such evidence is irrelevant and confusing given that such standards are preempted by federal law. We hold the trial court did not abuse its discretion in excluding the standards from evidence where appellants made no offer of proof as to relevance or non-preemption.

IV. Jury Instructions

Appellants additionally argue that the trial court erred by failing to provide a specific jury instruction as to the nature of the "property rights" at issue in the action. *501 In order to obtain review of a jury instruction, appellants must show that the charge to the jury contained an error of fundamental law or controlling principle. See Johnson v. Jensen, 433 N.W.2d 472, 475 (Minn. Ct.App.1988) (where objection to jury instruction is first raised in motion for new trial appellate review is limited to errors in fundamental law or controlling principle), aff'd in part, rev'd in part, 446 N.W.2d 664 (Minn.1989). The trial court's failure to specifically use the words requested by appellants does not constitute such an error.
Appellants contend that the jury was not permitted to know what property rights were at issue in a case in which substantial invasion of such property rights was a fundamental question. Appellants requested the following instruction:
The plaintiffs in this case have a right to use their property in relative freedom from irritating noise and interference. That right is in the nature of a property right for which they may demand compensation when it is denied to them by a governmental activity.
The trial court, however, declined to give the instruction as requested by appellants, indicating the requested instruction was improper without a balancing statement. The trial court indicated that the substance of appellant's requested instruction was encompassed in its charge:
The constitution of the United States  of the State of Minnesota, provides private property shall not be taken, destroyed or damaged for public use without just compensation therefore first paid or secured. However, not every inconvenience, annoyance or loss of peace and quiet by aircraft use in an airport will give rise to a cause of action against the airport operator.
The trial court's charge to the jury fairly conveyed a clear and correct understanding of the law. The charge adequately described the nature of appellants' property rights in its explanation of diminution of market value. This instruction and the charge as a whole are consistent with the law as set forth in Alevizos II.
Diminution in one's enjoyment and use of property is not the same as a diminution in market value; petitioners' error is in equating the two. An afront to one's sensibilities becomes legally cognizable here only when it becomes a servitude on the property itself, depressing its value on the market.
Alevizos II, 317 N.W.2d at 359.
A trial court is allowed considerable latitude in the language which it uses to instruct a jury and a new trial will not be granted when an instruction fairly and correctly stated applicable law. State Bank of Hamburg v. Stoeckmann, 417 N.W.2d 113, 116 (Minn.Ct.App.1987), pet. for rev. denied (Minn. Feb. 17, 1988). Here, the charge to the jury accurately described the law as set forth by the Minnesota Supreme Court. Accordingly, the trial court was in its broad latitude in determining the instructions to be included within its charge.

V. Directed Verdict

In Alevizos I the Minnesota Supreme Court held that in order to justify an award of damages, a landowner must show a "reasonable probability" that direct and substantial invasion of the landowner's property rights "will be continued in the future." Id., 298 Minn. at 488, 216 N.W.2d at 662. Rather than submitting this question to the jury, the trial court directed the verdict as to the issue. The trial court held as a matter of law that there was a reasonable probability that a substantial invasion, if it were found to exist, would continue into the future. The trial court found that because the invasions had continued for 18 years, the appellants had proven the "continued in the future" element of their case.
MAC argues it was error for the trial court to direct the verdict as to the "continued in the future" element where questions of fact create an issue for a jury. See Majerus v. Guelsow, 262 Minn. 1, 6, 113 N.W.2d 450, 454 (1962). Under Minnesota law, however, where evidence so overwhelmingly predominates in favor of a party so as to leave no doubt as to an issue and it would clearly be the duty of the trial court to set aside a contrary verdict as *502 being manifestly against the evidence, such party is entitled to a directed verdict. McCormick v. Malecha, 266 Minn. 33, 38, 122 N.W.2d 446, 450 (1963).
In reviewing a verdict directed by a trial court, an appellate court must consider the record in its entirety, treating as credible the evidence contrary to the verdict and all inferences which may reasonably be drawn from such evidence. A trial court should direct a verdict for the party in whose favor the evidence is overwhelmingly predominant even if there is some evidence for the adverse party. Plutshack v. University of Minnesota Hospitals, 316 N.W.2d 1, 5 (Minn.1982); Zinnel v. Berghuis Construction Co., 274 N.W.2d 495, 498 (Minn.1979).
In pretrial proceedings, in order to insure an orderly presentation of evaluation testimony and that all such testimony would be centered on a specific date, the parties stipulated that June 1, 1986 would be the valuation date of appellants' three parcels. The trial court allowed certain evidence of the future expectancy of noise levels in existence before June 1, 1986, and generally available to the real estate market under the rationale that existing facts as to future events might be known to the real estate markets and influence market valuation as of that date.
Appellants presented considerable evidence tending to establish that the noise invasion would continue in the future. Appellants presented evidence showing the noise problem had already continued for approximately 18 years and was getting worse and that the number of operations at MSP would continue to increase in the future.
Although MAC presented some evidence indicating a future decrease in noise levels, such evidence was largely uncertain. Evidence of the protracted existence of the noise problem and evidence tending to indicate that the problem would continue in the future, was much more compelling. Such evidence could require a trial court to set aside a contrary verdict.
MAC argues that the trial court erred in excluding evidence of future noise levels which was unavailable to the public on June 1, 1986. MAC contends that if repeated and aggravated invasion of property rights is found to exist, there would be no justification for a finding of a permanent constitutional taking, if a jury could determine that the intrusion would decrease markedly in the future.
Here, the evidence clearly manifested a reasonable probability that the aircraft noise at MSP would continue into the future. This is not to say, however, that the protracted existence of aircraft noise over 18 years alone would always sustain the "continued in the future" element of an inverse condemnation. Current evidence tending to show a future decrease in noise levels would certainly be probative to the issue.
However, the parties here stipulated to a valuation date as to the parcels at issue. As such, only evidence tending to influence the market value of appellants' property on June 1, 1986 was probative. The trial court thus did not err in directing the verdict where the probative evidence overwhelmingly predominates in favor of a finding that the aircraft noise would continue in the future.

DECISION
The judgment of the trial court finding no substantial invasion was not palpably contrary to the evidence at trial nor contrary to the law. Additionally, the trial court did not abuse its discretion in excluding evidence of the MPCA noise standards nor did it err in refusing to give appellants' specifically requested jury instruction where the court's instruction gave a clear and correct understanding of law to the jury. Accordingly, the trial court's judgment in favor of MAC is affirmed.
Affirmed.