*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1188**


Nereus Montemayor,
Appellant,

vs.

Sebright Products, Inc., d/b/a Bright Technologies,
defendant and third party plaintiff,
Respondent,

vs.

VZ Hogs, LLP,
Third Party Defendant.


**Filed March 28, 2016
Affirmed
Bjorkman, Judge**


Dodge County District Court
File No. 20-CV-14-32

Paul R. Dahlberg, Patterson Dahlberg, Rochester, Minnesota (for appellant)

R. Stephen Tillitt, Marissa K. Linden, Gislason & Hunter LLP, Minneapolis, Minnesota
(for respondent)

Considered and decided by Connolly, Presiding Judge; Stauber, Judge; and Bjorkman, Judge.

UNPUBLISHED OPINION

**BJORKMAN**, Judge

Appellant challenges summary judgment dismissing this products-liability action, arguing that the district court erred by determining as a matter of law that respondent owed no duty because the accident was not reasonably foreseeable. We affirm.

**FACTS**

Appellant Nereus Montemayor suffered serious injuries at work while using a high-density extruder manufactured by respondent Sebright Products, Inc., d/b/a/ Bright Technologies (Sebright). The extruder is designed to separate liquid from solid mass. Materials are loaded into an area called the hopper. A hydraulic ram then compresses the materials, forcing them into a perforated discharge chute. At the bottom of the discharge chute, a hydraulically powered door (the plenum) lowers to hold the materials under pressure to condense the remaining materials. After the plenum raises, the remaining solids fall into a self-contained compactor unit. Third-party defendant VZ Hogs, LLP purchased the extruder from Sebright in 2008 for the purpose of extracting liquid from food waste to be used in hog feed. VZ Hogs later built a shed (the liquid shed) to house the extruder, another machine, and storage tanks.

In August 2011, VZ Hogs hired Montemayor to work in the liquid shed. On September 8, Montemayor and two other employees were loading materials into the hopper when the extruder stopped working and a light on the control panel indicated that there was a problem. The employees believed that the extruder was jammed, but none of them had been trained on how to clear a jam. They first attempted to do so by poking at the materials

2

with a piece of wood. When that did not work, one of the employees climbed into the compactor and attempted to pull and rake the materials out of the discharge chute. They did not disconnect the extruder from the power source before entering the machine. At the end of the day, the extruder was still inoperable. The liquid shed supervisor directed Montemayor and another employee to continue their efforts the following day.

The next day, VZ Hogs employees again attempted to clear the jam. Montemayor and another employee took turns climbing into the discharge chute to remove materials by hand. They did so despite two prominent warning labels located just above the discharge chute. The first says "Do Not Enter" and the second says "Follow Lockout/Tagout Procedures Before Entering." Montemayor did not recall seeing either label, and none of the employees had received training on lockout/tagout procedures.[1] Montemayor's supervisor eventually called VZ Hogs's electrical maintenance person, Brian Gray, to assist. Gray activated the extruder in an attempt to clear the jam from the control panel. Unbeknownst to Gray, Montemayor was still inside the discharge chute. When Gray activated the extruder, the plenum came down on Montemayor's legs. Despite his fellow employees' quick response, Montemayor sustained significant injuries that required both legs to be amputated above the knee.

---

[1] Lockout/tagout procedures are commonly used in industrial settings and intended to safeguard employees while they work in dangerous areas. The basic procedure is that an employee disconnects a machine's power source and then places a padlock on the power switch. The employee keeps the key to the padlock so that no one can accidentally turn the machine on while the employee is working in the dangerous area. If more than one person is working in the area, multiple locks can be placed on the power source. VZ Hogs had established lockout/tagout procedures, but the employees involved in the accident were not aware of them.

As a result of the accident, VZ Hogs received OSHA citations for failing to "instruct every employee in the safe operation and servicing of all covered equipment with which he is or will be involved," failing to verify that all employees were clear of the extruder before engaging the power, and failing to follow lockout/tagout procedures while attempting to clear the jam from the extruder. All three violations were rated as serious and resulted in VZ Hogs being assessed penalties totaling $18,150.

Montemayor commenced this action alleging Sebright negligently failed to warn of the dangers associated with the extruder and that Sebright is strictly liable for the extruder's defective design. Sebright asserted contribution and indemnity claims against VZ Hogs, based, in part, on VZ Hogs's failure to properly train and instruct its employees on the operation of the extruder. Sebright moved for summary judgment. The district court granted the motion on the grounds that: Sebright did not owe a duty because Montemayor's injuries were not reasonably foreseeable, Montemayor could not establish a causal link between Sebright's alleged failure to warn and his injuries because he did not see or read the warnings prior to the accident, and Montemayor did not show that the extruder was defective when it left Sebright's control. Montemayor appeals.

## D E C I S I O N

On appeal from summary judgment, we review de novo whether there are any genuine issues of material fact and whether the district court erred in applying the law. *Ruiz v. 1st Fid. Loan Servicing, LLC*, 829 N.W.2d 53, 56 (Minn. 2013). "We view the evidence in the light most favorable to the party against whom summary judgment was granted." *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76-77 (Minn.

4

2002). A genuine issue of material fact exists when there is sufficient evidence that could lead a rational trier of fact to find for the nonmoving party. *DLH, Inc. v. Russ*, 566 N.W.2d 60, 69 (Minn. 1997).

To prevail on a negligence claim, a plaintiff must show (1) a duty, (2) breach of that duty, (3) that the plaintiff suffered an injury, and (4) that the breach proximately caused the plaintiff's injuries. *Gradjelick v. Hance*, 646 N.W.2d 225, 230 (Minn. 2002). Negligence and strict liability merge into a single products-liability theory in design-defect and failure-to-warn cases, both requiring proof of a manufacturer's duty of care. *Bilotta v. Kelley Co.*, 346 N.W.2d 616, 621-23 (Minn. 1984).

Whether a manufacturer has a legal duty to warn of dangers related to the use of its product generally is a question of law for the court to decide. *Germann v. F.L. Smithe Mach. Co.*, 395 N.W.2d 922, 924 (Minn. 1986).[2] To determine whether a duty to warn exists,

> the court goes to the event causing the damage and looks back to the alleged negligent act. If the connection is too remote to impose liability as a matter of public policy, the courts then hold there is no duty, and consequently no liability. On the other hand, if the consequence is direct and is the type of occurrence that was or should have been reasonably foreseeable, the courts then hold as a matter of law a duty exists.

---

[2] But in close cases, foreseeability is a jury question. *Bjerke v. Johnson*, 742 N.W.2d 660, 667-68 (Minn. 2007).

*Germann*, 395 N.W.2d at 924. Thus, whether a duty to warn exists depends on the foreseeability of the alleged danger and the resulting injury. *Westbrock v. Marshalltown Mfg. Co.*, 473 N.W.2d 352, 358 (Minn. App. 1991), *review denied* (Minn. Sept. 13, 1991). We review the existence of a duty de novo. *Glorvigen v. Cirrus Design Corp.*, 816 N.W.2d 572, 581 (Minn. 2012).

The underlying principle of reasonableness guides our determination of whether an accident was foreseeable. In determining foreseeability, we "look at whether the specific danger was objectively reasonable to expect, not simply whether it was within the realm of any conceivable possibility." *Whiteford ex rel. Whiteford v. Yamaha Motor Corp., U.S.A.*, 582 N.W.2d 916, 918 (Minn. 1998). We also consider whether "the possibility of an accident was clear to the person of ordinary prudence." *Domagala v. Rolland*, 805 N.W.2d 14, 27 (Minn. 2011) (quotation omitted). Stated another way, a manufacturer has a duty to design a product that does not present an unreasonable risk of harm associated with "reasonably foreseeable use[s]." *Bilotta*, 346 N.W.2d at 621 (quoting *Holm v. Sponco Mfg., Inc.*, 324 N.W.2d 207, 212 (Minn. 1982)). Here, that requires us to determine whether it was reasonable for Sebright to expect an individual to be inside the extruder while it was in operation.

Montemayor first argues that the district court misapplied the law by considering the totality of the circumstances when determining whether Sebright owed a duty. The district court reasoned that while some of the individual circumstances that led to the injury were foreseeable, the ultimate accident was not. And the court concluded that the constellation of events that culminated in the accident was not foreseeable. Montemayor

6

asserts that this analysis inappropriately focuses on the precise manner in which the accident occurred, rather than whether the possibility of an accident was clear to a person of ordinary prudence. We disagree. In determining whether a duty to warn exists, courts may determine that no duty exists when the connection between the alleged negligent act and the accident "is too remote to impose liability as a matter of public policy." *Germann*, 395 N.W.2d at 924. Evaluating whether the causal connection is too remote necessarily requires consideration of all relevant circumstances. *See Hart v. FMC Corp.*, 446 N.W.2d 194, 198 (Minn. App. 1989) (listing all the circumstances that led up to a worker being killed while using a machine and determining that the manufacturer could not have foreseen them), *review denied* (Minn. Dec. 1, 1989).

Montemayor next argues that the events leading up to his accident were foreseeable because the extruder was known to jam and it was reasonable to expect someone to enter the machine to remedy the problem. Montemayor relies on *Parks v. Allis-Chalmers Corp.* to support his assertion that it is reasonable for manufacturers to foresee an individual may be injured while attempting to clean a machine that is operational or starts unexpectedly. 289 N.W.2d 456 (Minn. 1979). We are not persuaded. In *Parks*, the plaintiff lost his arm while attempting to unclog a corn harvester by reaching into the stalk-chute door while the machine was still running. *Id.* at 459. Parks presented evidence that it was easier and faster to unclog the machine while it was running. *Id.* at 458. On that record, the supreme court determined a jury could find that the manufacturer knew, or should have known, that "some users would leave the power connected while unclogging because that would furnish mechanical assistance, saving time and effort." *Id.* at 459.

7

Unlike *Parks*, Montemayor presented no evidence that entering the discharge chute to manually unjam the extruder with the power connected served any purpose. And the circumstances leading up to his accident are not within a reasonable product manufacturer's sight. The circumstances include: Montemayor and his fellow employees failing to follow the instruction manual concerning how to clear jams and decals warning that no one should enter the extruder or enter the machine without following proper lockout/tagout procedures; VZ Hogs failing to implement and train its employees in general OSHA-required lockout/tagout procedures; Montemayor and other employees attempting to clear the jam manually; the liquid shed supervisor instructing both Montemayor and the electrical maintenance person to clear the jam; the employees failing to communicate with one another; and an employee activating the extruder's power while Montemayor was inside the machine, causing the plenum to drop on his legs. Moreover, the extruder did not start as a result of any malfunction, but rather because an employee purposely turned it on. In sum, Montemayor and his fellow employees were not only violating numerous standard workplace-safety rules and disregarding Sebright's warnings, but there was a significant breakdown in communication that led to multiple employees simultaneously attempting to clear the jam using different methods. While the constellation of circumstances that resulted in this tragic accident may have been within the realm of conceivable possibility, it is too remote to impose liability on Sebright as a matter of public policy.

In sum, because the use of the extruder and resulting injury here were not reasonably foreseeable, Sebright did not owe a duty. Accordingly, Montemayor's claims fail as a matter of law.[3]

**Affirmed.**

---

[3] Because Sebright owed no duty, we need not address Montemayor's remaining arguments. But we note, in accord with the district court, that claims premised on inadequate or absent warnings fail when the plaintiff did not read them. *See J & W Enters., Inc. v. Econ. Sales, Inc.*, 486 N.W.2d 179, 181 (Minn. App. 1992) ("Absent a reading of the warning, there is no causal link between the alleged defect and the injury.").