AIR TRANSPORT ASSOCIATION OF
AMERICA et al., Plaintiffs,

v.

J. R. CROTTI, Director of Aeronautics
of the State of California, et al.,
Defendants.

No. C–72–2189 WTS.

United States District Court,
N. D. California.

Feb. 10, 1975.

James T. Rohner, Deputy County Counsel, County of Santa Clara, San Jose, Cal.

Joseph D. Patello, San Diego Unified Port Dist., San Diego, Cal.

Robert Nuttman, Asst. County Counsel, County of Orange, Santa Ana, Cal.

Arne Hansen, Office of the County Counsel, San Diego, Cal.

Keith L. Gow, Division Chief Atty., San Jose, Cal.

Jerome Cohen, Deputy City Atty., San Francisco, Cal.

E. Judge Elderkin, Brobeck, Phleger & Harrison, San Francisco, Cal., for plaintiffs.

Nicholas C. Yost, Dept. of Atty. Gen., State of Cal., for defendants.

Tom Casey, Office of the Dist. Atty., Redwood City, Cal.

Milton Sherman, Principal Asst. City Atty., Los Angeles, Cal.

David Brier, Office of the County Counsel, Los Angeles, Cal.

Timothy Weston, Asst. Atty. Gen., Harrisburg, Pa.

Raymond Mushal, Dept. of Justice, Washington, D. C.

## OPINION

Before CHOY, Circuit Judge, and EAST and SWEIGERT, District Judges *.

EAST, Senior District Judge:

### PARTIES

The plaintiffs are the Association above, the members of which include virtually all United States scheduled air carriers operating in interstate and foreign commerce, and some 18 scheduled air carriers in intrastate, interstate, and foreign commerce, respectively, all operating under federal authority, (Airlines).

The defendants are the Director above and individual officers, directors or managing officials of the airports of the city and county of San Francisco; the Cities of Los Angeles, San Diego, and San Jose and the County of Orange; the District Attorneys of the Counties of San Mateo, Los Angeles, San Diego, Santa Clara, and Orange; the City of San Jose; and the Mayor of San Jose, all in California, (Airports).

The United States of America has, by leave of court, appeared as amicus curiae.

### JURISDICTION

We note the jurisdiction of this court under 28 U.S.C. §§ 1331 and 1337, §§ 2201 and 2202, and §§ 2281 and 2284.

### CONTENTIONS

The Airlines contend that Sections 21669 to 21669.4, inclusive, of the California Public Utilities Code, and the implementing regulations, Title 4 California Administrative Code, Subchapter 6, §§ 5000–5080.5, referred to as California Noise Standards, adopted November 25, 1970, are invalid and unenforceable by virtue of Article VI, Clause 2, (Supremacy Clause) and Article I, Section 8, Clause 3, (Commerce Clause) of the Constitution of the United States, as implemented by controlling federal legislation and regulations, and seek a declaratory judgment to that effect and injunctive relief thereon.

We have heard the parties on the Airlines' motions for summary judgment.

### FEDERAL STATUTES

The federal statutes intending to regulate the intensity of noise generated by aircraft in flight and incident thereto are the Noise Control Act of 1972, 42 U.S.C. § 4901 et seq., as it amends the Federal Aviation Act of 1958, 49 U.S.C. § 1301 et seq., and the regulations now and to be promulgated thereunder.[1] Of particular note is Section 2(a)(3) of the Noise Control Act, 42 U.S.C. § 4901(a)(3), which reads:

"The Congress finds . . . .

"(3) that, while primary responsibility for control of noise rests with State and local governments, Federal

---

* Honorable Herbert Y. C. Choy, United States Circuit Judge for the Ninth Circuit, William G. East, Senior United States District Judge for the District of Oregon, and William T. Sweigert, Senior United States District Judge for the Northern District of California, constituting a statutory three-judge district court by designation of Chief Judge Richard H. Chambers for the Ninth Circuit, dated February 13, 1974.

1. Basically the Noise Control Act of 1972, "by amending § 611 of the Federal Aviation Act, also involves the Environmental Protection Agency (EPA) [and FAA] in the comprehensive scheme of federal control of the aircraft noise problem." "EPA shall [not later than July, 1973] submit to FAA pro-

posed regulations to provide such 'control and abatement of aircraft noise and sonic boom' as EPA determines is 'necessary to protect the public health and welfare.' FAA is directed within 30 days to publish the proposed regulations in a notice of proposed rulemaking. Within 60 days after that publication, FAA is directed to commence a public hearing on the proposed rules . . . [and] within 'a reasonable time after the conclusion of such hearing and after consultation with EPA,' FAA is directed either to prescribe the regulations substantially as submitted by EPA, or prescribe them in modified form, . . . " *Burbank, infra,* at 628–630, 93 S.Ct. at 1857–1858. So far as we are now advised, EPA and FAA are now engaged in that task.

action is essential to deal with major noise sources in commerce control of which require national uniformity of treatment."

## CALIFORNIA STATUTES

Sections 21669 through 21669.5, inclusive, of the California Public Utilities Code, *inter alia,* required the California Department of Aeronautics to adopt noise regulations governing the operations of airports and of aircraft at all airports in California operating mandatorily under a permit issued by the Department of Aeronautics (excluded are airports operated by the United States, Public Utilities Code § 21661). California Public Utilities Code § 21669.4 provides that the violation by any aircraft of the noise regulations so adopted is deemed a misdemeanor and the operator of such aircraft is punishable by a fine of $1,000 for each infraction. Pursuant to the same § 21669.4, the county in which the airport is situated is given responsibility to enforce the noise regulations adopted by the Department. The airport's non-compliance subject their permit to suspension or cancellation.

At the risk of oversimplification, we summarize the objective of the regulations in §§ 5000–5080.5 as achieving a gradual reduction of noise to be suffered at airports operating under California permits to a level at which no residential community is exposed to more than 65 dB as of December 31, 1985 (California Administrative Code § 5012); that level is designated as the Community Noise Equivalent Level (CNEL). By that date, absent the granting of a variance (California Administrative Code §§ 5062, 5075), no incompatible land use is to exist within the 65 dB Noise Impact Boundary (residential usage is not a compatible one within the Noise Impact Boundary). Airports with a noise problem are responsible for establishing the Noise Impact Boundary by monitoring and measuring aircraft noise emissions (California Administrative Code §§ 5013).

Some of the means available in order to meet California's airport noise standards are set out in Section 5011 of the Administrative Code, which is entitled "Methodology for Controlling and Reducing Noise Problems," and which reads as follows:

"The methods whereby the impact of airport noise shall be controlled and reduced include but are not limited to the following:

"(a) Encouraging use of the airport by aircraft classes with lower noise level characteristics and discouraging use by higher noise level aircraft classes;

"(b) Encouraging approach and departure flight paths and procedures to minimize the noise in residential areas;

"(c) Planning runway utilization schedules to take into account adjacent residential areas, noise characteristics of aircraft and noise sensitive time periods;

"(d) Reduction of the flight frequency, particularly in the most noise sensitive time periods and by the noisier aircraft;

"(e) Employing shielding for advantage, using natural terrain, buildings, . . . and

"(f) Development of a compatible land use within the noise impact boundary.

"Preference shall be given to actions which reduce the impact of airport noise on existing communities. Land use conversion involving existing residential communities shall normally be considered the least desirable action for achieving compliance with these regulations."

Hence, the Code recommends certain procedures which can be employed in order to attain the established noise reduction standards, but no particular procedure is mandatory. Airport authorities are left to choose among the suggested means at their own discretion, tailoring their own programs to their peculiar

needs and inclinations. Furthermore, airport authorities are left free to devise and employ other noise control measures beyond those suggested in the Code.

In addition to the continuing CNEL standards prescribed for airports, the California regulations also require the establishment of maximum Single Event Noise Exposure Levels (SENEL) (California Administrative Code §§ 5006(d)). The counties are responsible for enforcement of these limits, and violation of the SENEL by the operator of an aircraft constitutes a misdemeanor punishable by a fine of $1,000 as above noted.

Specifically, the regulations fall into two categories: (a) CNEL (Community Noise Equivalent Level) standards prescribed for continued operation of airports with monitoring requirements, which focus upon the arrival of a prescribed ultimate maximum noise level and limiting the land uses subjected thereto around airport facilities; and (b) SNEL (Single Event Noise Exposure Levels) prohibitions applied to the inseparable feature of noise generated by an aircraft directly engaged in flight.

## DISCUSSION

We envision the regulations promulgated as a commendable progressive state-sponsored effort toward the future safety and protection of its citizenry from the ever increasing aircraft produced noise nuisances. We deem it most worthy of advisory consideration to the EPA which is now engaged in promulgating its advice to FAA pursuant to the Noise Control Act of 1972. However, portions thereof hover in direct confrontation with the avowed exclusive domain of federal power under the Noise Control Act of 1972 in the control of noise emitted by aircraft during flight operations and generally air space management. City of Burbank v. Lockheed Air Terminal, 411 U.S. 624, 93 S. Ct. 1854, 36 L.Ed.2d 547 (1973).

"The aircraft and its noise are indivisible; the noise of the aircraft extends outward from it with the same inseparability as its wings and tail assembly; to exclude the aircraft noise from the Town is to exclude the aircraft; to set a ground level decibel limit for the aircraft is directly to exclude it from the lower air that it cannot use without exceeding the decibel limit." Judge Dooling's writing in American Airlines v. Town of Hempstead, D.C., 272 F.Supp. 226, 230, aff'd, 2 Cir., 398 F.2d 369, cited in Burbank, 411 U.S. at 628, 93 S.Ct. 1854.

The Airlines' position narrows to the simple contention that any control and regulation of the levels of noise generated by aircraft in direct flight is preempted by the federal government; accordingly, each of the CNEL standards and related monitoring requirements and SENEL prohibitions are per se void and unenforceable under the holdings of Burbank, viz:

The "Act [the Noise Control Act of 1972, EPA, amending the Federal Aviation Act of 1958, FAA, and regulations thereunder] reaffirms and reinforces the conclusion that FAA, now in conjunction with EPA, has full control over aircraft noise, pre-empting state and local control." At 633, 93 S.Ct. at 1859.

Mr. Justice Douglas, writing for the majority in Burbank, after a detailed analysis of the Acts involved, the legislative history, and the play of the rationale of Rice v. Santa Fe Elevator Corporation, 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947), states: "It is the pervasive nature of the scheme of federal regulation of aircraft noise that leads us to conclude that there is pre-emption." At 633 of 411 U.S., at 1860 of 93 S.Ct.

The Airports counter and thrust at that position the exemption of a proprietor of an airport from the pre-emption by the federal government, which such exemption flows from the following footnote 14 to Burbank at 635 and 636, 93 S.Ct. at 1861:

"[14] The letter from the Secretary of Transportation also expressed the

view that 'the proposed legislation will not affect the rights of a State or local public agency, *as the proprietor of an airport,* from issuing regulations or establishing requirements as to the permissible level of noise which can be created by aircraft using the airport. Airport owners *acting as proprietors* can presently deny the use of their airports to aircraft on the basis of noise considerations so long as such exclusion is nondiscriminatory.' (Emphasis added.) This portion as well was quoted with approval in the Senate Report. *Ibid.*

"Appellants and the Solicitor General submit that this indicates that a municipality with jurisdiction over an airport has the power to impose a curfew on the airport, notwithstanding federal responsibility in the area. But, we are concerned here not with an ordinance imposed by the City of Burbank as 'proprietor' of the airport, but with the exercise of police power. While the Hollywood-Burbank Airport may be the only major airport which is privately owned, many airports are owned by one municipality yet physically located in another. For example, the principal airport serving Cincinnati is located in Kentucky. Thus, authority that a municipality may have as a landlord is not necessarily congruent with its police power. *We do not consider here what limits, if any, apply to a municipality as a proprietor.*" (Emphasis supplied.)

■ There is necessarily involved the related issue of state imposed sanctions, suspension or revocation of license or permits to operate airports, against the municipality proprietors for failure to perform mandatory affirmative action in the field of control and regulation of aircraft operations. Concededly, a complex state scheme of regulation and abstention on our part has been suggested. We reject that suggestion. It is manifest to us from the present record and the contention of the parties upon the motion before us that no state court determination of state law can avoid the contention of federal pre-emption under the Supremacy and Interstate Clauses of the United States Constitution. Procunier v. Martinez, 416 U.S. 396, 404, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974); Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); and Baggett v. Bullitt, 377 U.S. 360, 375–379, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964). See Lake Carriers' Association v. Mac-Mullan, 406 U.S. 498. 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972).

■ At the outset, we pay homage and respect to the "presumption of constitutionality with which [the SENEL and CNEL provisions] comes to us . . . .." Flemming v. Nestor, 363 U. S. 603, 617, 80 S.Ct. 1367, 1376, 4 L.Ed. 2d 1435 (1960); Davis v. Department of Labor and Industries, 317 U.S. 249, 257, 63 S.Ct. 225, 87 L.Ed. 246 (1942); South Carolina State Highway Dept. v. Barnwell Bros., 303 U.S. 177, 191, 58 S. Ct. 510, 82 L.Ed. 734 (1938); Davies Warehouse Co. v. Bowles, 321 U.S. 144, 153, 64 S.Ct. 474, 88 L.Ed. 635 (1944); Bibb v. Navajo Freight Lines, 359 U.S. 520, 524, 79 S.Ct. 962, 3 L.Ed.2d 1003 (1959).

We believe that the Airlines' total reliance upon *Burbank* is misplaced. The factual picture supporting *Burbank* is of narrow focus, a single police power ordinance of a municipality—not an airport proprietor—intending to abate aircraft noise by *forbidding* aircraft flight at certain night hours. The holding in *Burbank* is limited to that proscription as constituting an unlawful exercise of police power in a field pre-empted by the federal government, and we take as gospel the words in footnote 14 in *Burbank:* "[A]uthority that a municipality may have as a landlord is not necessarily congruent with its police power. *We do not consider here what limits, if any, apply to a municipality as a proprietor.*" (Emphasis supplied.)

■ It is now firmly established that the airport proprietor is responsible for the consequences which attend his operation of a public airport; his right

to control the use of the airport is a necessary concomitant, whether it be directed by state police power [2] or his own initiative. United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946); Griggs v. Allegheny County, 369 U.S. 84, 82 S.Ct. 531, 7 L.Ed.2d 585 (1962). See Aaron et al. v. City of Los Angeles, 40 Cal.App.3d 471, 115 Cal. Rptr. 162 (1974), and authorities cited at 175, cert. denied 419 U.S. 1122, 95 S.Ct. 806, 42 L.Ed.2d 822 (1975).[3] That correlating right of proprietorship control is recognized and exempted from judicially declared federal pre-emption by footnote 14. Manifestly, such proprietary control necessarily includes the basic right to determine the type of air service a given airport proprietor wants its facilities to provide, as well as the type of aircraft to utilize those facilities. The intent of Congress not to interfere with such basic airport control is made clear in the legislative history of § 611 of the Federal Aviation Act of 1958. S.Rep. No. 1353, 90th Cong., 2d Sess., at 7.

> "The Federal Government is in no position to require an airport to accept service by larger aircraft and, for that purpose to obtain longer runways. Likewise, the Federal Government is in no position to require an airport to accept service by noisier aircraft, and for that purpose to obtain additional noise easements. The issue is the service desired by the airport owner and the steps it is willing to take to obtain the service. In dealing with this issue, the Federal Government should not substitute its judgment for that of the States or elements of local government who, for the most part, own and operate our Nation's airports. The proposed legislation is not designed to do this and will not prevent airport proprietors

from excluding any aircraft on the basis of noise considerations."

The preamble to 14 C.F.R., Part 36, emphasizes that local air proprietors have the responsibility for determining the permissible noise levels for aircraft using their airport:

> "Compliance with Part 36 is not to be construed as a Federal determination that the aircraft is 'acceptable,' from a noise standpoint, in particular airport environments. Responsibility for determining the permissible noise levels for aircraft using an airport remains with the proprietor of that airport. The noise limits specified in Part 36 are the technologically practicable and economically reasonable limits of aircraft noise reduction technology at the time of type certification and are not intended to substitute federally determined noise levels for those more restrictive limits determined to be necessary by individual airport proprietors in response to the locally determined desire for quiet and the locally determined need for the benefits of air commerce";

and Section 36.5 of 14 C.F.R. provides:

> " . . . [t]he noise levels in this part have been determined to be as low as is economically reasonable, technologically practicable, and appropriate to the type of aircraft to which they apply. No determination is made, under this part, that these noise levels are or should be acceptable or unacceptable for operation at, into, or out of, any airport."

The monitoring provisions in the California airport noise abatement scheme are innocuous to aircraft traffic. The monitoring of noise levels at and near airports is a passive function involving ground noise measuring machines and recording sound volume data which in no

---

2. The power of the State to generally regulate its political subordinates, including local airport authorities, is well established as a matter of law. City of Trenton v. State of New Jersey, 262 U.S. 182, 185–187, 43 S.Ct. 534, 67 L.Ed. 937 (1923); Trans World Airlines v. City and County of San Francisco, 228 F.2d 473 (9th Cir. 1955).

3. In *Aaron*, an airport proprietor was held liable through inverse condemnation for diminution of land values caused by noise from landing and take-off flights of aircraft.

wise intrude upon or affect flight operations and air space management in commerce.

The State dictated employment of shielding and ground level facility configurations, as well as development of compatible land uses under the provisions of CNEL, is so patently within local police power control and beyond the intent of Congress in the federal legislation that further discussion would be wasteful.

We do not here consider what limits, if any, apply to any of the CNEL provisions and requirements. While we are satisfied from the record that threatening action has been taken, and § 5011(d) appears suspect, none of the Airports have as yet taken definite affirmative action in the field of controlling aircraft traffic under CNEL. So further delineation of any airport proprietor's authority or limitations thereof in the enforcement of CNEL must await another day.

■ We conclude that the CNEL provisions and regulations are not per se invalid as delving into and regulating a field of aircraft operation engaged in direct flight, which is pre-empted unto the federal government under the Constitution and the laws of the United States.

Whether or not the CNEL requirements and regulations are *in fact* unrealistic, arbitrary and unreasonable, and an abuse of police powers constituting an unlawful burden or infringement upon any United States constitutional right of privilege held by a proprietor of an airport, or an unreasonable burden upon interstate and foreign commerce as utilized by aircraft, is not before us upon undisputed facts and must await a future day of judgment.

■ The SENEL provisions and regulations are not so favored. We are satisfied and conclude that the SENEL provisions and regulations of noise levels which occur when an aircraft is in direct flight, and for the levying of criminal fines for violation, are a per se unlawful exercise of police power into the exclusive federal domain of control over aircraft flights and operation, and air space management and utilization in interstate and foreign commerce. The thrust of the Single Event Noise Exposure Levels is clear and direct and collides head-on with the federal regulatory scheme for aircraft flights delineated by and central to the *Burbank* decision.

### CONCLUSION

Accordingly we conclude as a matter of law that the Airlines are entitled to a partial summary judgment declaring each of the SENEL regulations, and particularly those levying criminal fines, void and unenforceable as in contravention of the Constitution and laws of the United States, and enjoining the implementation and enforcement thereof by any official or officer of the Airports, Cities, Counties, and State of California, without costs.

We reserve jurisdiction for the determination of any appropriate issues developable upon the Airlines' claims against the CNEL provisions.

Counsel for the airlines is requested to prepare, serve, and present to this court an appropriate proposed partial summary judgment within 20 days from the date hereof.