**STATE of Minnesota, by MINNESOTA PUBLIC LOBBY and by South Metro Airport Action Council, Appellant,**

v.

**METROPOLITAN AIRPORTS COMMISSION, Respondent,**

and

**Air Transport Association of America, Intervenor, Respondent.**

**No. C9–93–854.**

Court of Appeals of Minnesota.

Oct. 19, 1993.

Thomas H. Goodman, Siegel, Brill, Gruepner & Duffy, Minneapolis, for State of Minn., by Minnesota Public Lobby and by South Metro Airport Action Council.

Michael Berens, Kelly & Berens, Minneapolis, Lucinda E. Jesson, Jonathan H. Bloomberg, Oppenheimer, Wolff & Donnelly, Minneapolis, Thomas W. Anderson, Metropolitan Airports Com'n, Minneapolis, for Metropolitan Airports Com'n.

Thomas W. Tinkham, Paul B. Klass, Creighton R. Magid, Dorsey & Whitney, Minneapolis, for Air Transport Ass'n of America.

Robert J. Alfton, Minneapolis City Atty., Michael T. Norton, Asst. City Atty., Minneapolis, for amicus curiae City of Minneapolis.

Considered and decided by PARKER, P.J., and KLAPHAKE and AMUNDSON, JJ.

## OPINION

PARKER, Judge.

Appellants, proceeding under the Minnesota Environmental Rights Act in the name of the State of Minnesota, sought a declaratory judgment establishing that respondent Metropolitan Airports Commission (MAC) is, as a matter of state law, subject to the authority of the Minnesota Pollution Control Agency and has the obligation to obey the noise pollution rules of the MPCA to the extent possible. The district court granted summary judgment, concluding that federal law preempts application of these standards to MAC and to airports in the state. We conclude that federal law permits some state control over airport noise and reverse.

## FACTS

Appellants Minnesota Public Lobby and South Metro Airport Action Council (SMAAC) are nonprofit organizations asserting that excessive noise from the Minneapolis–St. Paul Airport (MSP airport) violates state noise control standards.

Respondent Metropolitan Airports Commission is a public corporation formed under Minn.Stat. §§ 473.601–.679. The legislature has granted extensive powers to MAC, including the right to sue and be sued, acquire easements, adopt ordinances, manage airports, and acquire property through eminent domain. Minn.Stat. § 473.608. It is undisputed that MAC is the proprietor of the MSP airport.

In 1974, the Minnesota Pollution Control Agency (MPCA) established noise standards. *See* Minn.Rules 7010.0040. These rules do not expressly exempt MAC or the MSP airport. *See* Minn.R. 7010.0030 (stating that no person shall violate noise standards unless exempted by statute); Minn.Stat. § 116.07, subd. 2a (listing exemptions from noise standards).

In 1986, an administrative law judge concluded that proposed amendments to the state noise standards would be unreasonable if applied to MAC.

In May 1992, appellants filed suit against MAC, asserting that MAC permitted MSP airport to exceed state noise standards periodically. Appellants request the following relief in their complaint: (1) a declaration that state noise standards apply to MAC; (2) a declaration that MAC periodically violated state noise standards; (3) an order enjoining MAC from violating or permitting violations of state noise standards; and (4) an order compelling MAC to consider and implement a plan to prevent violations of state noise standards. Appellants do not seek any specific noise control measures, but would leave it to MAC to choose the measures necessary to conform to the state noise standards.

## ISSUE

Does federal preemption of control over aircraft flights and aircraft noise extend to state noise standards governing airports, even if the standards do not purport to control aircraft flight?

## DISCUSSION

■ On review of an entry of summary judgment, the appellate court must determine whether there are any genuine issues of material fact and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979). Because the district court's grant of summary judgment was based on the purely legal grounds of federal preemption, de novo review by this court is appropriate. *See Frost–Benco Electric Ass'n v. Minn. Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984) (an appellate court need not defer to a lower court's decision on a legal issue).

Of the three grounds that MAC presented for summary judgment, the court granted it solely on the basis of federal preemption. We do not review the other two bases and consider the failure to grant summary judgment on them to constitute a denial of those grounds.

■ The issue we decide is whether federal preemption of control over aircraft flight

**22**

extends to all attempts by a state to control airport noise. We conclude that federal law permits some state control over airport noise so long as there is no attempted control of aircraft flight.

■ Federal law generally preempts the field of "airspace management," "aircraft flight," and, more specifically, "aircraft noise." *See City of Burbank v. Lockheed Air Terminal, Inc.*, 411 U.S. 624, 627, 633, 93 S.Ct. 1854, 1856, 1859–60, 36 L.Ed.2d 547 (1973); *San Diego Unified Port Dist. v. Gianturco*, 651 F.2d 1306, 1309 (9th Cir. 1981); *Air Transport Ass'n of Am. v. Crotti*, 389 F.Supp. 58, 65 (N.D.Cal.1975). In *Burbank*, the United States Supreme Court struck down, on the basis of federal preemption, a local ordinance that prohibited take-offs from an airport between 11 p.m. and 7 a.m. *Id.* at 626, 640, 93 S.Ct. at 1856, 1863.

The Court's rationale for preemption of the curfew ordinance was that conflicting local regulations could disrupt national air traffic. *See id.* at 627–28, 639–40, 93 S.Ct. at 1856–57, 1862–63. The Court noted that, if local governments were free to regulate aircraft flight, "fractionalized control of the timing of takeoffs and landings would severely limit the flexibility of FAA in controlling air traffic flow." *Id.* at 639, 93 S.Ct. at 1862.

■ Accordingly, as a general rule, a municipality or state may not directly control aircraft flight. Case law demonstrates that almost any state control of individual aircraft, whether curfews, altitude limits, or fines for noise emissions, is preempted because it potentially disrupts national air traffic. *See id.* (imposition of curfews); *American Airlines, Inc. v. City of Audubon Park, Ky.*, 407 F.2d 1306, 1307 (6th Cir.1969), *cert. denied,* 396 U.S. 845, 90 S.Ct. 78, 24 L.Ed.2d 95 (1969) (bans on flights below a certain altitude); *United States v. City of New Haven*, 496 F.2d 452, 454 (2d Cir.1974), *cert. denied,* 419 U.S. 958, 95 S.Ct. 218, 42 L.Ed.2d 174 (1974) (prohibiting aircraft from flying in certain areas); *Crotti*, 389 F.Supp. at 65 (fines on noisy aircraft); *National Aviation v. City of Hayward, Cal.*, 418 F.Supp. 417, 421 (N.D.Cal.1976) (excluding noisy aircraft from airports).

■ The owner or proprietor of an airport, however, is permitted to impose nondiscriminatory restrictions on aircraft, even if they directly control aircraft flight. *Gianturco*, 651 F.2d at 1316–17; *Crotti*, 389 F.Supp. at 63–64. *See also Burbank*, 411 U.S. at 635, n. 14, 93 S.Ct. at 1861 n. 14. Because many airports are owned by municipalities, these municipal proprietors also may impose nondiscriminatory restrictions even if they directly control aircraft flight. *Hayward*, 418 F.Supp. at 421, 424–25; *Burbank*, 411 U.S. at 649–50, 93 S.Ct. at 1867–68 (citing S.Rep. No. 1353, 90th Cong., 2d Sess. 6–7, *reprinted in* 1968 U.S.Code Cong. & Admin.News pp. 2688, 2693).

The rationale for the distinction between proprietors and nonproprietors is a pragmatic one. The owner of an airport may be held liable to nearby residents and businesses for damages from excessive noise from the airport. *Griggs v. Allegheny County, Pa.*, 369 U.S. 84, 90, 82 S.Ct. 531, 534, 7 L.Ed.2d 585 (1962). Common sense dictates, therefore, that an airport owner, whether a private entity or a municipality, have authority to alleviate airport noise in an effort to avoid potential liability. *Gianturco*, 651 F.2d at 1316–17.

A state or municipality that is not the airport owner, however, may not impose regulations that directly interfere with aircraft flight. Nonetheless, we conclude that a nonproprietor state or municipality retains some authority to control airport noise so long as those regulations do not purport to control aircraft flight.

■ Unless Congress's intent is clear, federal law does not supersede the historic police powers of the states. *Framingham Union Hosp. Inc. v. Travelers Ins. Co.*, 721 F.Supp. 1478, 1490 (D.Mass.1989). Noise control is deep-seated in the police powers of the state. *Burbank*, 411 U.S. at 638, 93 S.Ct. at 1862. Therefore, we cannot accept MAC's argument that any attempt of a state to control airport noise is invalid.

We conclude that Congress, although preempting regulation of aircraft, aircraft flight and airspace management, permitted states to retain some powers to regulate

airport noise. We believe that, so long as a state does not attempt to control aircraft operations, thereby risking disruption of national air traffic, it may impose or require measures to mitigate airport noise. The *Crotti* and *Gianturco* cases illustrate well the distinction between impermissible control of aircraft flight or operations and permissible control over airport noise.

The federal district court in *Crotti* upheld imposition of California's noise emission standards on an airport proprietor but struck down restrictions on noise generated by aircraft directly engaged in flight. *Crotti*, 389 F.Supp. at 65. The noise standards fell into two classes: (1) "Single Event Noise Exposure Level" (SENEL) to regulate noise emissions from individual aircraft;[1] and (2) "Community Noise Equivalent Level" (CNEL) to regulate the noise levels and land use around airports. *Id.* at 61–62.

The district court struck down the SENEL regulations as an invalid attempt by a non-proprietor state to control aircraft flight. *Id.* at 65. The CNEL regulations, on the other hand, were upheld as valid. *Id.*

The federal court's distinction between the two regulations centers on control of aircraft flight. The impermissible SENEL regulations directly control aircraft flight by imposing fines on aircraft that emit specified levels of noise. The permissible CNEL regulations, on the other hand, do not purport to regulate aircraft flight.

The permissible CNEL regulations included noise monitoring provisions, "shielding and ground level facility configurations, as well as development of compatible land uses." *Id.* 64–65. The CNEL regulations also recommended, but did not require, that airports reduce noise by reducing flight frequency, changing flight paths and runway schedules, and encouraging use of the airport by aircraft with low noise levels. *Id.* at 61. The court carefully noted that validity of these regulations as enforced "must await a future day of judgment." *Id.* at 65. *Crotti*

thus supports appellants' position that state noise standards apply to a municipal proprietor so long as those standards do not directly interfere with aircraft flight.

MAC next argues that appellants seek to compel it to restrict aircraft flight at the MSP airport and that such an attempt is invalid. We conclude that appellants do not seek to force MAC to restrict aircraft flight, and if they did such an attempt would be preempted by federal law. After *Crotti*, the Ninth Circuit faced this very issue: whether a nonproprietor state could compel a municipal airport proprietor to restrict aircraft flight. *Gianturco*, 651 F.2d at 1308. In a carefully crafted analysis, the Ninth Circuit concluded that a state regulation requiring an airport proprietor to impose curfews on aircraft flights was invalid. *Id.* The court essentially held that a state could not compel an airport proprietor to take measures that the state itself could not directly impose. The *Gianturco* court also expressly noted that its decision is consistent with *Crotti*. *Id.* at 1315.

■ We find the reasoning of these cases persuasive. The noise regulations established by the Minnesota Pollution Control Agency are valid because they neither directly control aircraft flight nor attempt to do so indirectly by compelling an airport proprietor to restrict aircraft flight.

MAC also argues that preemption is required under this court's holding in *Alevizos v. Metropolitan Airports Comm'n*, 452 N.W.2d 492 (Minn.App.1990) (*Alevizos III*). We disagree. In *Alevizos III*, this court held that the trial court did not abuse its discretion in refusing to admit the state noise control standards as evidence in an inverse condemnation action. *Id.* at 500. The trial court had ruled that the evidence was inadmissible absent a showing of relevance and nonpreemption. *Id.* This court affirmed that ruling. *Id.* It is true the opinion remarks that "such standards are preempted

---

1. Violation by an aircraft was a misdemeanor punishable by a $1,000 fine. *Crotti*, 389 F.Supp at 61.

by federal law." *Id.* That remark, however, is clearly dictum and therefore not binding.[2]

MAC also asserts that an administrative law judge in 1986 found the noise standards to be unreasonable if applied to MAC. This assertion is inaccurate. The ALJ was ruling on proposed amendments to the noise standards, and he found the proposed standards to be unreasonable but made no conclusions about the noise standards existing at the time. Because the current noise standards purport to apply to all persons within the state and contain no express exemption for MAC or the MSP airports, we must assume they apply to both.

Finally, MAC argues that any attempt to control airport noise equals control of aircraft flight and is therefore preempted by federal law. We disagree. Noise control need not be equivalent to flight control. As appellants' attorney aptly noted at oral argument, under MAC's interpretation of federal preemption, any state action would be preempted if conceivably motivated by a desire to control airport noise. Thus, for example, the Minnesota state statute prohibiting the airport from expansion into the City of Richfield would arguably be an invalid attempt to control aircraft noise. *See* Minn. Stat. § 473.631 (1992).

Because the state noise standards do not purport to control aircraft flight or operations and need not be so applied, they are not preempted by federal law. It is possible that enforcement of the noise standards will result in a claim that specific applications of the noise standards constitute attempts to achieve state control over aircraft flight at MSP airport. No such issue is before us, however. As in *Crotti*, consideration of the validity of enforcement of the state noise control standards against MAC and MSP airport must await another day.

## DECISION

We reverse the trial court's grant of summary judgment against appellants. We grant summary judgment to appellants on

their request for a declaration that the state noise standards apply to MAC and the MSP airport.

**Reversed.**

---

**2.** Appellants assert that passage of the Airport Noise & Capacity Act of 1990 renders the "preemption ruling" of *Alevizos III* inapposite. They assert that this Act permits airport proprietors greater control over noisy aircraft, thereby giving MAC more options for complying with the state noise control standards.