STATE of Minnesota by MINNESOTA PUBLIC LOBBY and by South Metro Airport Action Council, Respondent,

v.

METROPOLITAN AIRPORTS COMMISSION, Petitioner, Appellant,

and

Air Transport Association of America, Intervenor, Petitioner, Appellant.

No. C9–93–854.

Supreme Court of Minnesota.

Aug. 5, 1994.

Michael Berens, Kelly & Berens, Minneapolis, and Jonathan H. Bloomberg, Lucinda E. Jesson, Oppenheimer, Wolff & Donnelly, St. Paul, and Thomas W. Anderson, Gen. Counsel, Metropolitan Airports Com'n, Minneapolis, for Metro. Airports Comm.

Thomas Tinkham, Paul B. Klass, Jean F. Holloway, Creighton R. Magid, Dorsey & Whitney, Minneapolis, for Air Transport Assoc. of America.

Thomas H. Goodman, Jordan M. Lewis, Siegel, Brill, et al., Minneapolis, for respondent.

Hubert H. Humphrey, III, Atty. Gen., Eldon G. Kaul, Lisa R. Tiegel, Asst. Attys. Gen., St. Paul, for amicus curiae State of MN.

## OPINION

PAGE, Justice.

In this case, we are asked to determine whether the Minnesota Pollution Control Agency's (MPCA) noise standards are preempted by federal law as applied to the Metropolitan Airports Commission's (MAC) operation of the Minneapolis–St. Paul International Airport (MSP). Two nonprofit organizations, Minnesota Public Lobby (MPL) and South Metro Airport Action Council (SMAAC), brought this action in the name of the State of Minnesota[1] seeking to require

1. The Minnesota Environmental Rights Act, Minn.Stat. § 116B.01–.13 (1992), allows parties to:

[M]aintain a civil action in the district court for declaratory or equitable relief in the name of the state of Minnesota against any person,

the MAC to comply with the MPCA's noise pollution standards set forth at Minn.R. §§ 7010.0040–.0080 ("noise standards").[2]

The MAC is a public corporation formed under Minn.Stat. §§ 473.601–.679 (1992). The MAC's responsibilities include the promotion of air navigation and transportation in the state along with "minim[izing] environmental impact from air navigation and transportation, and to that end provid[ing] for noise abatement, control of airport area land use, and other protective measures." Minn. Stat. § 473.602, subd. 2. The MAC has the "use, management, operation, regulation, policing, and control of any or all airports owned by either the city of Minneapolis or St. Paul * * *." Minn.Stat. § 473.621, subd. 2. The MAC can sue and be sued, acquire rights or easements, adopt ordinances, construct and equip new airports, manage airports, and acquire property through eminent domain. Minn.Stat. § 473.608.

The noise standards, promulgated in 1974, pursuant to Minn.Stat. § 116.07 (1992), define maximum permissible noise and apply to all "persons," including public corporations, unless exempted by Minn.Stat. § 116.07, subd. 2a. Minn.R. § 7010.0030. The MAC is not exempted by Minn.Stat. § 116.07, subd. 2a. The standards divide land into three "Noise Area Classifications" and create limits on noise pollution for each classification. Minn.R. §§ 7010.0040–.0050. Most of the area surrounding the MSP falls within Classification 1, which has the strictest requirements and applies to areas where people have an expectation of peace and quiet such as residential areas. The standards set a maximum noise level for daytime and nighttime which may not be exceeded for more than a certain portion of each hour. A variance may be sought and if "the agency finds that by reason of exceptional circumstances strict conformity with any provisions of any noise rule would cause undue hardship, would be unreasonable, impractical, or not feasible under the circumstances, the

agency may permit a variance * * *." Minn.R. § 7010.0080.

Respondents MPL/SMAAC commenced this declaratory judgment action seeking an order (1) declaring that the noise standards set forth at Minn.R. § 7010.0040 apply to the MAC and that the MAC is in violation of the noise standards; (2) enjoining the MAC from continuing to violate the noise standards; and (3) compelling the MAC to implement a plan to comply with the noise standards. In its answer, the MAC admitted aircraft operations at MSP are not in compliance with the noise standards, but asserted among other defenses that the noise standards do not apply to aircraft operations at MSP by virtue of the doctrine of federal preemption.

The parties brought cross-motions for summary judgment. MPL/SMAAC argued that no factual issues existed which would preclude summary judgment in their favor because the MAC admitted being in violation of the noise standards, and therefore, the court could resolve the issue by ruling that the standards apply to the MAC. The MAC argued it was entitled to summary judgment on three grounds: (1) the issues in the case were political questions; (2) federal law preempts the noise standards; and (3) the standards cannot be enforced because they are outside the enabling legislation of the MPCA.

A hearing on the motions was held before Hennepin County District Court Judge Pamela G. Alexander. At the hearing, the Air Transport Association of America (ATA), a non-profit association of federally certified air carriers, sought and was granted permission to intervene pursuant to Minn.R.Civ.P. 24. The ATA supported the MAC's position that the MPCA noise standards as applied to aircraft operations at MSP are preempted by federal law. By order dated January 28, 1993, Judge Alexander denied MPL/SMAAC's motion, and granted the MAC's motion in its entirety holding that the noise

for the protection of the air, water, land, or other natural resources located within the state, whether publicly or privately owned, from pollution, impairment or destruction.

Minn.Stat. § 116B.03, subd. 1.

2. The MPCA itself has never attempted to enforce the noise standards against the MAC.

standards were preempted by federal law because they could not be enforced "without substantially impacting operations at MSP." The district court followed the reasoning set out by the Supreme Court in *City of Burbank v. Lockheed Air Terminal, Inc.,* 411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973), which invalidated attempts by airport non-proprietors to regulate airport noise and made clear that noise abatement regulations which impinge on aircraft operations are preempted by federal law. The district court found that the only way the MAC could comply with the standards would be to either substantially reduce aircraft operations at MSP, "convert much of South Minneapolis and Richfield to nonresidential areas," or move the airport.

The court of appeals reversed the district court and instead granted summary judgment to MPL/SMAAC declaring that the noise standards apply to the MAC. *State by Minnesota Public Lobby v. Metropolitan Airport Comm'n,* 507 N.W.2d 19 (Minn.App. 1993). The court of appeals, interpreting *Burbank* and subsequent federal cases, concluded that a state, even though a nonproprietor, has some authority to control airport noise, although it may not enact regulations which "purport to control aircraft flight." The court of appeals stated:

> Because the state noise standards do not purport to control aircraft flight or operations and need not be so applied, they are not preempted by federal law. It is possible that enforcement of the noise standards will result in a claim that specific applications of the noise standards constitute attempts to achieve control over aircraft flight at MSP airport. No such issue is before us, however. As in *Crotti,* consideration of the validity of enforcement of the state noise control standards against MAC and MSP must await another day.

*Id.* at 24.

We granted the MAC's and ATA's petitions for further review. We reverse.

The issue is whether federal law preempts the MPCA's noise standards as applied to the MAC. Preemption can be express or implied, and where it is implied "congressional intent to do so must be clearly inferred, either from the extent of federal involvement or from the scope of the federal interest; and even then the state will be preempted only to the extent that state regulation 'actually conflicts' with federal law." *Forester v. R.J. Reynolds Tobacco Co.,* 437 N.W.2d 655, 658 (Minn.1989).

The Supreme Court considered whether state regulation of aircraft noise is preempted by federal law in *Burbank,* 411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973). In *Burbank,* the city enacted an ordinance which imposed a curfew on airplane takeoffs. Although the Noise Control Act of 1972, 49 U.S.C. § 1431 (Supp.II 1970), included no express preemption provision, the Court struck down the curfew ordinance reasoning that the Noise Control Act "reaffirms and reinforces the conclusion that FAA, now in conjunction with EPA, has full control over aircraft noise, pre-empting state and local control." *Id.* at 633, 93 S.Ct. at 1859.[3] The Court reasoned that "the pervasive nature of the scheme of federal regulation of aircraft noise" indicated Congressional intent to preempt the states in this area. *Id.* at 633, 93 S.Ct. at 1859. The Court, quoting *Northwest Airlines Inc. v. Minnesota,* 322 U.S. 292, 303, 64 S.Ct. 950, 956, 88 L.Ed. 1283 (1944), stated:

> Federal control is intensive and exclusive. Planes do not wander about in the sky like vagrant clouds. They move only by federal permission, subject to federal inspection, in the hands of federally certified personnel and under an intricate system of federal commands. The moment a ship taxis onto a runway it is caught up in an elaborate and detailed system of controls.

*Id.* at 633–34, 93 S.Ct. at 1860. The Court realized "[c]ontrol of noise is of course deep-

---

**3.** The MAC argues that Congress again "reaffirmed" its intent to preempt aircraft noise regulation in the Airport Noise and Capacity Act of 1990. Congress stated in this legislation that:

(2) community noise concerns have led to uncoordinated and inconsistent restrictions on aviation which could impede the national air transportation system;

(3) a noise policy must be implemented at the national level.

49 U.S.C. app. § 2151 (Supp.1994).

seated in the police power of the states," but read the Noise Control Act as leaving "no room for local curfews or other local controls." *Id.* at 638, 93 S.Ct. at 1862. "[F]ractionalized control of * * * takeoffs and landings would severely limit the flexibility of FAA in controlling air traffic flow," and "[t]he difficult[y] of scheduling flights to avoid congestion and the concomitant decrease in safety would be compounded." *Id.* at 639, 93 S.Ct. at 1862. Federal courts have subsequently struck down regulations of nonproprietor municipalities imposing curfews and prescribing air traffic patterns. *See Pirolo v. City of Clearwater,* 711 F.2d 1006 (11th Cir.1983); *San Diego Unified Port District v. Gianturco,* 651 F.2d 1306 (9th Cir.1981).

Despite the broad preemptive language of *Burbank,* MPL/SMAAC argue that *Burbank* did not preclude all efforts at noise control by nonproprietor municipalities. They argue that federal courts interpreting *Burbank* have approved noise standards such as the MPCA's and have approved methods the MAC could use to comply with those standards. The MAC counters that *Burbank* makes it clear federal law preempts all state noise regulations affecting aircraft operations, and that the federal cases cited by MPL/SMAAC are distinguishable because here undisputed facts demonstrate that compliance with the standards is impossible without impinging on aircraft operations.

MPL/SMAAC contend that two California federal court decisions support its position that the MPCA's noise standards are not preempted by federal law. In *Air Transport Assoc. of America v. Crotti,* 389 F.Supp. 58 (N.D.Cal.1975), the federal district court considered the California Community Noise Equivalent Level (CNEL) regulations which provided for noise reduction standards and suggested methods for achieving noise reduction. The court upheld the regulations holding they were "not per se invalid as delving into and regulating a field of aircraft operation engaged in direct flight * * *." *Id.* at 65. The court considered it premature to consider whether the regulations would be invalid as applied, stating:

> Whether or not the CNEL requirements and regulations are *in fact* unrealistic, arbitrary and unreasonable, and an abuse of police power constituting an unlawful burden or infringement upon any United States constitutional right of privilege held by a proprietor of an airport, or an unreasonable burden upon interstate and foreign commerce as utilized by aircraft, is not before us upon undisputed facts and must wait a future day of judgment.

*Id.* (emphasis in original).

In *San Diego Unified Port District v. Gianturco,* 651 F.2d 1306 (9th Cir.1981). The California Department of Transportation (Cal Trans) attempted to impose a curfew pursuant to the CNEL regulations on aircraft flights at the San Diego International Airport operated by the San Diego Unified Port District. The Port District, which had instituted its own less restrictive curfew, sought a variance from the regulations which was granted subject to a requirement that the Port District extend its curfew two hours. *Id.* at 1309. A federal district court enjoined enforcement of the Cal Trans curfew. *San Diego Unified Port District v. Gianturco,* 457 F.Supp. 283 (1978). The Ninth Circuit affirmed holding the curfew was a direct restriction on flight and therefore preempted. *Gianturco,* 651 F.2d at 1319. MPL/SMAAC notes the Ninth Circuit distinguished between regulation of the source of airport noise and noise abatement plans that do not impinge on aircraft operations stating that "[a]s we read *City of Burbank,* Congress has preempted only local regulation of the source of noise[;] [l]ocal governments may adopt abatement plans that do not impinge on aircraft operations." *Id.* at 1314. MPL/SMAAC argue the MPCA in essence has adopted an abatement plan that does not impinge on aircraft operations and just as in *Crotti* and *Gianturco,* the MAC has means available to comply with the noise standards.

The district court correctly distinguished *Crotti* and *Gianturco* and followed *Burbank* in granting summary judgment to the MAC. It found that enforcement of the noise standards would " 'severely limit the flexibility of the FAA in controlling aircraft flow,' " quoting *Burbank,* 411 U.S. at 639, 93 S.Ct. at

1862, and recognized that although the noise standards do not expressly require any direct control of aircraft operations, the undisputed evidence demonstrates that compliance would be impossible without either substantially reducing aircraft operations, including reducing departures by 82% during the peak daytime hours,[4] converting much of South Minneapolis, and the surrounding suburbs to nonresidential areas, or moving the airport.[5]

The court of appeals erred by equating this case with *Crotti* in that the issue here is whether the noise standards as applied to the MAC are preempted. The *Crotti* court, having determined the regulations were not per se preempted, expressly left for another day the issue of whether the regulations were preempted as applied. The undisputed facts demonstrate the noise standards as applied to the MAC would impinge on aircraft operations.

The attorney general, in its amicus brief, argues the evidence is disputed, and the district court ignored evidence demonstrating how the MAC could comply with the noise standards. The record reveals, however, the district court correctly found the evidence presented no disputed material facts as to whether compliance with the standards was possible without impinging on aircraft operations. The evidence submitted by MPL/SMAAC lists 19 actions [6] they contend the MAC could take to reduce noise. In submitting the list, MPL/SMAAC fail to indicate which of the actions do not impinge on aircraft operations. Further, there is nothing in the record to suggest that if any or all of

the actions on the list were taken, the MAC would be brought into compliance with the noise standards without substantially reducing aircraft operations at MSP, converting the surrounding residential areas to nonresidential uses, or moving the airport.

■ MPL/SMAAC also argue the availability of a variance precludes a finding that the noise standards are preempted. They reason that if the MAC finds it must take an action which it cannot be legally required to take, it can simply seek a variance. That argument fails because the MAC cannot be required to seek a variance from noise standards which are preempted and thus not applicable to it.

Finally, MPL/SMAAC argue the MAC's proprietor powers provide it with a choice of methods to comply with MPCA noise standards. In a footnote in *Burbank*, the Court suggested that a municipality acting as the proprietor of an airport might have different powers to control aircraft noise than a municipality acting pursuant to its police power. 411 U.S. at 635–36, n. 14, 93 S.Ct. at 1861, n. 14. Subsequently, federal courts have described the power of airport proprietors to be broader than that possessed by a nonproprietor municipality, such that a proprietor, with some exceptions, "may restrict the use of its facilities on the basis of noise without running afoul of the preemption doctrine." *Gianturco*, 457 F.Supp. at 291; *see also National Aviation v. City of Hayward*, 418 F.Supp. 417 (N.D.Cal.1976). However, as MPL/SMAAC themselves admit, the MPCA

4. If only quieter Stage 3 aircraft were operated at MSP, flights would have to be reduced by over 60% during peak daytime hours.

5. The legislature has set in place a plan to examine moving the airport and this plan does not include the MAC unilaterally deciding to move the airport to abate noise. The legislature has directed the MAC and the metropolitan council to present a report to the legislature which includes recommendations on a new airport. Minn.Stat. § 473.618 (1992).

6. The affidavit of Dr. James B. Serrin suggests the following actions: (1) direct restrictions on Stage 2 flights; (2) limiting the types of aircraft using the facility; (3) implement differential services or amenities for those who use Stage 3 flights; (4) offer loans or direct subsidy payments; (5) provide loan guarantees; (6) acquire

aviation easements; (7) require hush kits on all or most Stage 2 aircraft using MSP; (8) eminent domain; (9) reduce gate capacity at MSP; (10) seek available permission for more parallel take-offs; (11) apply for further funding or authority from the state legislature to abate noise; (12) use of voluntary agreements or jawboning as necessary; (13) charge extra fees to carriers who use a runway that is not preferred; (14) research and implement the use of reliever airports, including the airport in Rochester; (15) begin actively supporting a new airport; (16) research and implement remote new runways; (17) establish a noise abatement office; (18) actively encourage a more rapid analysis of the dual track process as promulgated by the Legislature; and (19) apply to the MPCA for variances.

cannot require an airport proprietor to use its broader proprietary powers. *See Gianturco*, 457 F.Supp. at 291–92.

We do not doubt the aircraft noise generated by MSP is a serious and unpleasant problem which interferes with the enjoyment of life and property for people living in areas affected by that noise. The problem, though, cannot be remedied with means Congress preempted. The Supreme Court has made clear states may not enact noise regulations which impinge on aircraft operations, and that is precisely what the MPCA noise standards do. The MAC's enabling legislation creates statutory responsibilities which include minimizing the environmental impact of aircraft operation and abating noise. The MAC must act on these responsibilities in balancing the needs of air carriers, travelers, and residents of areas surrounding the airport.

Because we find the noise standards to be preempted, we need not consider the MAC's other arguments in support of its summary judgment motion. Reversed.

GARDEBRING and ANDERSON, JJ., took no part in the consideration or decision of this case.