STATE of Minnesota, Respondent,

v.

David William SHERBROOKE, Appellant.

No. CX–01–120.

Court of Appeals of Minnesota.

Sept. 25, 2001.

Mike Hatch, Attorney General, St. Paul; and Charles C. Glasrud, Stevens County Attorney, Bruce W. Klopfleisch, Assistant County Attorney, Morris, for respondent.

Jay D. Carlson, Fargo, ND, for appellant.

Considered and decided by HANSON, Presiding Judge, WILLIS, Judge, and HALBROOKS, Judge.

## OPINION

HALBROOKS, Judge.

Appellant argues the district court erred in finding that he violated Minn.Stat. § 169.80, subd. 2 (1998), by unlawfully operating an overly wide vehicle on a state highway. Appellant contends that an airplane is not a "vehicle" for purposes of the traffic-safety statutes and that federal regulations preempt state law in the area of aircraft operation. Because the statute is not preempted by federal regulations and the term "vehicle" is defined broadly enough to include an airplane, we affirm.

## FACTS

Appellant David W. Sherbrooke, a landscaper, flew his aircraft to visit a job site near State Highway 59. The airplane had a wingspan of 33 ½ feet and was designed for short takeoffs and landings. Although there was no emergency or bad weather, appellant landed the airplane on the highway and then immediately taxied off the road surface.

State Trooper Greg Peterson saw the aircraft parked off the road approximately ten minutes later. Peterson contacted the highway patrol district office and advised appellant that he would be mailed a notice of the appropriate statutory violation. Peterson allowed appellant to take off, using the highway as a runway. Approximately one month later, appellant was mailed a citation for operating an overly wide vehicle in violation of Minn.Stat. § 169.80 (1998).

Appellant moved the district court to dismiss the complaint. He argued that Peterson lacked probable cause to issue a citation because the statute does not include aircraft. The court dismissed appellant's motion, finding that the statutory definition of a vehicle included aircraft.

The case was submitted on stipulated facts for a bench trial. According to the stipulation, appellant's aircraft requires approximately 200 feet of runway to take off and 300 feet to land. The court found appellant guilty of violating Minn.Stat. § 169.80 and imposed a fine of $385, but stayed imposition pending this appeal.

## ISSUES

1. Did the district court err by refusing to dismiss for lack of probable cause?

2. Does federal aviation law preempt state traffic-safety law?

## ANALYSIS

### I.

"A dismissal for lack of probable cause is appealable if it is based on a legal determination such as the interpretation of a statute." *State v. Larkin*, 620 N.W.2d 335, 336 (Minn.App.2001) (citation omitted). As with other legal determinations, such a dismissal is reviewed de novo.

*State v. Linville*, 598 N.W.2d 1, 2 (Minn. App.1999).

> Under Minnesota law,
>
> [i]t is a misdemeanor for a person to drive or move, or for the owner to cause or knowingly permit to be driven or moved, on a highway a vehicle or vehicles of a size or weight exceeding the [statutory] limitations * * *.

Minn.Stat. § 169.80, subd. 1(a) (1998). With the exception of a vehicle owned by a political subdivision used for transporting sewage, any vehicle over 102 inches in width exceeds the statutory limitation and is considered overly wide. *Id.* at subd. 2(a) (1998).

 We disagree with appellant that Peterson lacked probable cause to cite him for violation of Minn.Stat. § 169.80 (1998). While probable cause requires something more than mere suspicion, it requires less than the evidence necessary for conviction. *State v. Camp*, 590 N.W.2d 115, 119 n. 9 (Minn.1999). The standard for probable cause is an objective one that does not look to the subjective knowledge or intent of the officer, particularly knowledge of the law. *See State v. Pleas*, 329 N.W.2d 329, 332–33 (Minn.1983). Rather, probable cause requires that there are sufficient facts "such that under the circumstances a person of ordinary care and prudence [would] entertain an honest and strong suspicion that a crime has been committed." *State, Lake Minnetonka Conservation Dist. v. Horner*, 617 N.W.2d 789, 796 (Minn.2000) (alteration in original) (quotation omitted). The criminal-procedure rules do not require that a citation refer to any particular statute. Minn. R.Crim. P. 6.01, subd. 3. Even in a formal complaint, an error in citation would be considered a defect of form, not of substance. *State v. Owens*, 268 Minn. 321, 325, 129 N.W.2d 284, 287 (1964). Thus, the issue is whether Peterson had probable cause to believe that appellant had committed an illegal act, not whether or not Peterson could cite the specific statutory section. We agree with the district court that Peterson had probable cause to believe appellant had committed an unlawful act.

Next, appellant argues that the statute is inapplicable because an aircraft does not fit the definition of a "vehicle." The traffic-safety statute defines "vehicle" as

> every device in, upon, or by which any person or property is or may be transported or drawn upon a highway, excepting devices used exclusively upon stationary rails or tracks.

Minn.Stat. § 169.01, subd. 2 (1998).

 Appellant correctly notes that the overwidth statute is part of Minnesota's Highway Safety Act, and aircraft do not normally travel on state highways. But the legislature intended to regulate *any* mode of transportation used on state highways, "whether or not specifically contemplated at the time the statutes were enacted." *Boschee v. Duevel*, 530 N.W.2d 834, 839 (Minn.App.1995), *review denied* (Minn. June 14, 1995). We have consistently interpreted the term "vehicle" in the broadest sense possible with the understanding that if the legislature intended a narrower definition, it would adopt one. *E.g., id.* at 840 (an inline skater falls under the definition of "vehicle"); *Melby v. Comm'r of Public Safety*, 367 N.W.2d 527, 528 (Minn. 1985) (a snowmobile falls under the definition of "vehicle"). Allowing aircraft to land without cause on state highways presents an obvious hazard, conflicting with the purpose of Minn.Stat. ch. 169 (1998) to promote traffic safety. Therefore, we hold that aircraft are included in the definition of vehicle.

 Appellant also argues that his aircraft registration ought to be considered a special permit and thus exempt him from

the overwidth statute. *See* Minn.Stat. § 169.80, subd. 1 (allowing specially-permitted vehicles to be exempt for width requirements). He contends that "special permits" are not defined in the statute and since aircraft must be registered under Minn.Stat. § 360.60 (1998), his registration should be construed as a special permit. But Minn.Stat. § 169.86 defines special permits and specifies which vehicles may be permitted, and there is no mention of aircraft or aircraft registration within this provision. We do not need to look to the aircraft-registration statute to determine what is a special permit under Minn.Stat. § 169.86. *See* Minn.Stat. § 645.17(2) (2000) (requiring courts to read a statute so that it is "effective and certain").

 Finally, appellant accuses the district court of "administrative ruling making" without the benefit of legislative authority. Appellant contends that the district court usurped legislative power by expanding a traffic-safety statute to include aircraft. We disagree. "It is emphatically the province and duty of the judicial department to say what the law is." *State, City of Minneapolis v. Reha,* 483 N.W.2d 688, 696 (Minn.1992) (Gardebring, J. dissenting) (quoting *Marbury v. Madison,* 1 Cranch 137, 5 U.S. 137, 177, 2 L.Ed. 60 (1803)). The district court, therefore, had the duty to interpret the overwidth statute. We conclude that the district court did not err in finding that appellant was guilty of unlawfully operating an overly wide vehicle on a public highway.

## II.

 Appellant also contends that federal law preempts the state from regulating air traffic. Whether Minnesota's regulatory power is preempted by federal law is a question of law, and, thus, our review is de novo. *In re Speed Limit for*

*Union Pacific R.R. Through City of Shakopee,* 610 N.W.2d 677, 682 (Minn.App. 2000). We begin with the assumption that the " 'historic police powers of the [s]tates' are not to be eclipsed unless to do so was 'the clear and manifest purpose of Congress.' " *Dahl v. Charles Schwab & Co.,* 545 N.W.2d 918, 922 (Minn.1996) (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)). Preemption can be express or implied, but where it is implied,

> congressional intent to do so must be clearly inferred, either from the extent of federal involvement or from the scope of the federal interest; and even then the state will be preempted only to the extent that state regulation "actually conflicts" with federal law.

*State by Minn. Public Lobby v. Metro. Airports Comm'n,* 520 N.W.2d 388, 390 (Minn.1994) (quotation omitted). "[A] federal agency acting within the scope of its congressionally delegated authority has the power to preempt state law through its regulations." *Follmer v. Duluth, Missabe & Iron Range Ry. Co.,* 585 N.W.2d 87, 90 (Minn.App.1998) (citation omitted).

 Appellant argues that because federal law so dominates air traffic, it preempts any state law over aircraft. He points to a federal regulation concerning careless or reckless operation of an aircraft, arguing that this language preempts state law. *See* 14 C.F.R. § 91.13 (2000).

 Both the Minnesota Supreme Court and the U.S. Supreme Court have discussed whether federal aviation statutes and regulations preempt state law. In striking down a municipal curfew on take-offs, the Supreme Court noted that

> [f]ederal control [over aviation] is intensive and exclusive. Planes do not wander about in the sky like vagrant clouds. They move only by federal permission,

subject to federal inspection, in the hands of federally certified personnel and under an intricate system of federal commands. The moment a ship taxis onto a runway it is caught up in an elaborate and detailed system of controls.

*City of Burbank v. Lockheed Air Terminal, Inc.,* 411 U.S. 624, 633–34, 93 S.Ct. 1854, 1860, 36 L.Ed.2d 547 (1973) (quotation omitted). Although "[c]ontrol of noise is of course deep-seated in the police power of the [s]tates," the Court held that the federal noise-control statute left "no room for local curfews or other local controls." *Id.* at 638, 93 S.Ct. at 1862. Similarly, the Minnesota Supreme Court held that the Minnesota Pollution Control Agency could not regulate airport noise because state regulations were preempted by federal law. *Metro. Airports Comm'n,* 520 N.W.2d at 393. As the Supreme Court noted, allowing state-by-state regulations to control air traffic would be "totally inconsistent with the objectives of the federal statutory and regulatory scheme" because such regulations "would cause a serious loss of efficiency in the use of the navigable airspace." *Burbank,* 411 U.S. at 627–28, 93 S.Ct. at 1857 (quotation omitted).

 But as the district court and the state point out, *Burbank* and related cases concern a nuisance especially problematic for aircraft—noise—and allowing local control over noise would impede the federal scheme for air traffic. *Id.* at 628, 93 S.Ct. at 1857 ("The aircraft and its noise are indivisible * * *." (quotation omitted)). Merely because a state law touches on some aspect of the airline industry does not necessarily mean that it is preempted by federal law. *See Condor Corp. v. City of St. Paul,* 912 F.2d 215, 219 (8th Cir. 1990) ("We see no conflict between a city's regulatory power over land use, and the

federal regulation of airspace, and have found no case recognizing a conflict."); *cf. Dahl,* 545 N.W.2d at 922 (federal preemption of state police powers must be "clear and manifest"). For example, the Court held that the Airline Deregulation Act of 1978, 49 U.S.C. § 1305(a)(1) (1994), does not

channel into federal courts the business of resolving, pursuant to judicially fashioned federal common law, the range of contract claims relating to airline rates, routes, or services.

*Am. Airlines, Inc. v. Wolens,* 513 U.S. 219, 232, 115 S.Ct. 817, 825, 130 L.Ed.2d 715 (1995). Other state courts have found that laws criminalizing unsafe operation of an aircraft are not preempted by federal law. *See Delta Air Lines, Inc. v. Air Line Pilots Ass'n,* 861 F.2d 665, 672 (11th Cir. 1988) (noting that "courts have consistently upheld" state laws criminalizing drinking while operating an aircraft); *People v. Valenti,* 200 Cal.Rptr. 862, 865 (Cal.Super.1984) (examining state law criminalizing unsafe use of an aircraft); *Ward v. State,* 280 Md. 485, 374 A.2d 1118 (1977) (examining state law criminalizing drinking while operating an aircraft). States have also prohibited aircraft from landing in certain areas without running afoul of federal law. *See, e.g., Gustafson v. City of Lake Angelus,* 76 F.3d 778, 789–90 (6th Cir.1996) (finding municipal ordinance restricting use of seaplanes was not preempted by federal aviation law, particularly because of a lack of regulatory or statutory authority); *Condor Corp.,* 912 F.2d at 219 (finding a city's refusal to allow construction of a heliport did not violate federal law).

 Similarly, we hold that federal law does not bar Minnesota from regulating the operation of aircraft on our highways and streets. Federal law regulates air traffic in the nation's skies and on

runways in our nation's airports, but just because a piece of land *could* be used for a runway does not subject it to the federal government's control. *Condor Corp.*, 912 F.2d at 219. Once a state designates property to be used as an airport, that property becomes subject to federal control. *Gustafson*, 76 F.3d at 783 (distinguishing federal regulation "of the airspace over the United States and the regulation of aircraft in flight * * * from the regulation of the designation of plane landing sites, which involves local control of land * * * use").

Restricting aircraft from operating on highways as overwide vehicles does not impede the federal interest in timely and efficient air travel.[1] Because the federal regulation is silent as to operating an aircraft for non-emergency landings on public roads, state law ought to apply. Therefore, we agree with the district court and hold that federal law does not preempt states from regulating the operation of an aircraft on a state highway.

## DECISION

The district court did not err in its findings that appellant unlawfully operated an overly wide vehicle and that federal aviation law does not preempt state overwidth limitations.

**Affirmed.**

---

1. We note that the case before us deals with an aircraft using a public highway for non-emergency purposes. Minnesota law allows aircraft to make forced landings for emergencies "on the lands or waters of another, without the other's consent," and provides remedies for damages caused by a forced landing. Minn.Stat. § 360.012, subd. 3 (2000).